# The Vogue Company, Appellant, *v.* The John C. Winston Company.

*Equity—Contracts—Equitable subrogation—Application.*

To apply the doctrine of subrogation it is necessary to show an obligation of the person against whom relief is sought. It rests on the principle that one who is compelled to pay a debt which another should pay because of the neglect of the latter so to do, may recover on the ground that the law infers the debtor requested such payment.

The principle of subrogation will only be applied where a person under some sort of compulsion or in protection of his property or credit, has been compelled to pay that which was primarily the liability of another person.

A plaintiff having a contract of warranty available for his protection has a legal remedy available, and, in such case, the equitable doctrine of subrogation cannot be invoked.

Where a publishing company having purchased a magazine and having agreed to pay an annuity to its former owners, subsequently sold it to another publishing company, without providing for the assumption of this obligation, and the purchasers in turn sold the magazine, the latter cannot be compelled, under the equitable doctrine of subrogation to pay the annuity, which the present owners of the magazine had paid under a threat that the trustee for the annuitants would institute proceedings to prevent the publication of the magazine.

Argued November 16, 1920. Appeal, No. 290, Oct. T., 1920, by plaintiff, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1918, No. 1949, discharging rule for judgment for want of a sufficient affidavit of defense in the case of the Vogue Company v. The John C. Winston Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit to recover royalties paid by plaintiff.

The facts are stated in the opinion of the Superior Court.

Rule for judgment for want of a sufficient affidavit of defense.

The court discharged the rule. Plaintiff appealed.

*Error assigned* was the order of the court.

*Robert W. Archbald, Jr.,* for appellant, cited: Adams v. Kuehn, 119 Pa. 76; Hogg v. Longstreth, 97 Pa. 255; Mosier's App., 56 Pa. 76; Hoffa v. Hoffa, 38 Pa. Superior Ct. 356; School Dist. v. Natural Gas Co., 18 Pa. Superior Ct. 73.

*Joseph J. Brown,* and with him *Henry P. Brown,* for appellee, cited: Sweeney v. Houston, 243 Pa. 542; Copper v. Walther, 44 Pa. Superior Ct. 298.

OPINION BY HENDERSON, J., March 5, 1921:

When the plaintiff brought this action it proceeded on the assumption that the contract, by which Henry T. Coates & Company transferred to the defendant company all its business, including the right to publish the magazine, "House and Garden," contained an obligation of the defendant to make an annual payment of $249 to Burrell, trustee for the former owners of the magazine. Not having a copy of that contract, the plaintiff was compelled to rely on its understanding as to its contents in stating the cause of action. When the affidavit of defense came in, however, a copy of the contract was set forth at length, from which it appeared not only that the defendant had not agreed to pay to Burrell the annual sum stated for which Coates & Company was bound, but that it was expressly agreed between the parties that the defendant assume no liability for the debts or obligations of Coates & Company, and that the property purchased by the defendant under the agreement was to be transferred and delivered clear of all claims or liens whatever. As the case then stood, it appeared from the pleadings that there was no contract liability of the defendant, to Burrell, trustee, nor was there a contract at any time existing between the plaintiff and the defend-

ant. The plaintiff was therefore compelled to shift its ground with respect to the defendant's liability, and this it does by a claim that it is (1) entitled to equitable subrogation to the rights of Burrell, trustee; (2) that it may take advantage of a contract under which Burrell, trustee, has a right of action against the defendant. To apply the doctrine of subrogation, it is necessary to show an obligation of the person against whom the relief is sought. It rests on the principle that one who is compelled to pay the debt which another should pay because of the neglect of the latter so to do, may recover on the ground that the law infers the debtor requested such payment. The principle has been applied in many cases, all of which rest on the foundation that a person, under some sort of compulsion or in protection of his property or credit, has been compelled to pay that which was the primary liability of another person. Numerous illustrations are given in Mosier's App., 56 Pa. 76. On principles of equity and benevolence, the court will, in appropriate cases, substitute him who makes payment under such circumstances to the place and rights of him in whose behalf such payment is made. Before this principle can be made available to the plaintiff, however, it must appear that the sum paid by the plaintiff was an obligation which should have been met by the defendant. It is a remedy only allowed when necessary to the ends of justice. Being equitable in its nature, it is not available where there is an adequate remedy at law. One cannot be heard to appeal to the equitable powers of the court when he has the means of redress in his own hands. It will be noticed that in the contract between the plaintiff and Conde Nast & Co., from whom it purchased the magazine, there is a covenant of warranty of the property sold. It may be well questioned, therefore, whether with this legal remedy available a chancellor will listen to an application for equitable relief. There is nothing in the statement of claim to show that this obligation cannot be enforced, and therefore

no reason disclosed why application should be made for equitable relief through some theory of subrogation. The subrogation sought must be worked out through Burrell, trustee, to whom plaintiff's payment was made. We must inquire, therefore, by what obligation the defendant was bound of which the plaintiff could take advantage. In making this inquiry, we are brought to the consideration also of the second position taken by the plaintiff which is that where a person acquires money or other property from another on the promise that the thing so received shall be paid or delivered to a third person for whose benefit only the transaction occurs, such third person may maintain an action in his own name to recover from the custodian the thing or the value thereof deposited for him. The effort is to apply the doctrine of Blymire v. Boistle, 6 Watts 182; Adams v. Kuehn, 119 Pa. 76; Sweeney v. Houston, 243 Pa. 542; Cooper v. Walther, 44 Pa. Superior Ct. 298, and other kindred cases, to the facts set forth in the statement of claim. It will be seen then that in either view of the case, the plaintiff claims through Burrell, trustee. Some right in him must appear on the record which could be enforced against the defendant, if the plaintiff is to have any standing on either theory suggested by the learned counsel for the appellant. What is the right of the trustee against the defendant? There was no obligation of the latter to pay him anything. Coates & Company agreed to pay him $249 a year, but when they turned over their business to the defendant, they did not provide that this obligation should be assumed by the purchaser. The defendant was under no obligation, so far as the contract with Coates & Company is concerned, to discharge the obligation of the vendors to Burrell. The only fact out of which an assertion of an obligation can arise is found in an agreement, dated July 1, 1909, plaintiff's exhibit "C," by which the defendant sold to Robert M. McBride in the City of New York the entire interest of the vendor in the name and good will of the publication,

"House and Garden," together with its assets. Other articles of property were included in the contract, particular reference to which is unnecessary. The contract provided that a corporation was to be formed under the laws of the State of New York with a capital of $50,000, under the name of McBride, Winston & Company, to which was to be transferred by McBride the "House and Garden" magazine and all the other property covered by the contract. In the sixth paragraph of that contract is this provision: "The said corporation, McBride, Winston & Company, shall assume one-half the obligation referred to in exhibit "A," hereto annexed, to pay the stockholders of the Architectural Publishing Company the sum of two hundred and forty-nine dollars ($249) per year so long as the magazine, "House and Garden," shall be published, and the party of the first part shall continue obligated, and covenants and agrees to pay one-half of the sum of two hundred and forty-nine ($249) per year to the same persons and for the same period." At the time this contract was executed, "McBride, Winston & Company" was not an existing corporation. It of course did not contract—the agreement was between a private individual, McBride, who was not at that time the owner of the magazine, and the defendant company which was the owner of it and was transferring it to McBride with the intention of having it at a later date turned over to the proposed new company. Burrell, trustee, does not appear from the papers to have had anything to do with this negotiation. He was not a party to the contract. No consideration moved from him to the other parties. The provision with respect to the payment of $249 was therefore an arrangement between the parties for their own interest and advantage. What the circumstances were which made it advisable to put this provision in the contract are not disclosed by anything in the documents before us. The defendant did pay the company, or Burrell, its trustee, while it published "House and Garden." Why

this was done is not made apparent by the contracts. We are unable to see after a comparison of all of the exhibits contained in the statement of claim and the affidavit of defense that any right of action arose to Burrell by reason of this arrangement between McBride and the defendant. The latter could pay to Burrell what it pleased. It may have considered itself bound to pay while it published the magazine, but the only obligation brought to our attention in which Burrell acquired rights is exhibit "A" of the statement of claim transferring the magazine to Coates & Company, to which contract Burrell became a party by virtue of an agreement made thereafter. We think that Burrell acquired no right under the contract, exhibit "C," to enforce a claim against the defendant. The provision with respect to the payment of the $249 annually would limit the liability of either of the parties to the contract, as between themselves, but as to other persons, it was a voluntary undertaking without a consideration at that time moving from any person with respect to the yearly payment referred to.

We are unable to see that anything was placed in the possession of the defendant by Burrell or any other party on his behalf through the contract exhibit "C," which would inure to the advantage of the plaintiff either by equitable subrogation or in an action of assumpsit on the doctrine of the cases above recited. If then no contract liability existed, no cause of action is set up which can be enforced, for the plaintiff is many steps removed from the defendant. No business relation existed between them. The plaintiff alleges that it was compelled by Burrell, trustee, to pay the $249 under a threat that he would institute proceedings to prevent it from publishing the magazine. It seeks to recover one-half of that amount so paid, by force of the sixth paragraph of the contract exhibit "C." Whether the theory be that an equitable subrogation may be availed of, or that action can be maintained on the doctrine of

the cases above cited, the whole cause stands on the right of Burrell, trustee, to recover from the defendant. A careful consideration of the somewhat involved case satisfies us that the payment by the plaintiff to Burrell was not on the primary obligation of the defendant. It follows that on either theory suggested by the learned counsel for the appellant, the action of the court below in refusing judgment for want of a sufficient affidavit of defense was correct.

The judgment is affirmed.