## Torado et al. v. Commonwealth.

*Certiorari—Violation of Sunday laws—Act of April 22, 1794.*

1. In order to sustain a conviction for violating the Act of April 22, 1794, it is necessary that the record of conviction should contain a finding that the special act complained of has been performed by the defendant, and it should describe or define it in such a way as to distinguish it and show that it falls within an unlawful class.

2. Where, under a rule of court, a writ of *certiorari* must be served at least ten days before the return-day thereof, and, upon motion to quash such a writ, the court allowed an *alias* writ, which was duly served; in such a case such motion to quash would be overruled.

3. Where a defendant who has been convicted and sentenced under the Act of April 22, 1794, 3 Sm. Laws, 177, voluntarily pays the fine and costs, the Court of Common Pleas has no power, on *certiorari*, subsequently to reverse the judgment and order restitution.

4. If the defendants, instead of applying for a writ of *certiorari*, had applied for an allowance of an appeal to the Court of Quarter Sessions within five days after their conviction, payment of the fine and costs imposed by the justice would not have been a barrier under the Act of April 1, 1925, P. L. 98, amending the Act of April 17, 1876, P. L. 29, as amended by the Act of July 11, 1917, P. L. 771.

5. If the defendants by a writ of *habeas corpus* had raised the question of the legality of their arrest on Sunday, the court would have been required to decide that issue.

6. Or if it be true that the justice or constable imprisoned or arrested the defendants in violation of the Act of Jan. 12, 1705, 1 Sm. Laws, 25, the law affords remedy therefor.

*Certiorari.* C. P. Westmoreland Co., May T., 1926, No. 860.

*James L. Colbert* for plaintiff; *Carrol Caruthers*, for defendants.

WHITTEN, J.—On Saturday evening, March 20, 1926, the plaintiffs in error and twenty-nine other persons were attending a social event at the home of Mr. and Mrs. Henry Leonard, known as Leonard's Inn, in Penn Township, Westmoreland County, Pennsylvania. The persons there assembled did not disperse at midnight, but remained there until 3 o'clock A. M., March 21, 1926 (being Sunday morning), when John B. West, a justice of the peace, Constables H. C. Taylor and B. W. Kunkle and Deputy Constables C. Gressler and Glenn N. Welsh entered the said house, at which time said justice of the peace announced to those present (hereinafter designated as the defendants) that they were guilty of desecrating the law relating to the Sabbath.

The said justice then announced that each of said defendants should place in his hands the sum of $5, to be forfeited in case such defendants did not appear at the office of said justice March 25, 1926, for a further hearing, and that any defendant failing to place this sum in his hands would be committed to the county jail. Fifty-one of the defendants placed the required forfeit in the hands of the justice, and the justice committed the two other defendants to the county jail because of their failure to furnish the required cash bail. After remaining in jail about six hours, these two defendants furnished the required cash bail and were released from further imprisonment.

March 25, 1926—being the day fixed by the justice for the appearance of such defendants as desired a further hearing—twenty-two of the said defendants appeared at the office of the said justice for such hearing, and then and there, complying with the requests of defendants' attorney, the justice returned to each defendant so appearing the said $5 cash bail.

At the request of their attorney, the hearing as to nine of the defendants who did not appear was continued until April 1, 1926. The record of the justice makes no further reference to these nine defendants.

Also, on the same day (March 25, 1926), the said justice announced that cash bail of $5 paid by each of the other twenty-one defendants who failed to appear for such hearing was "forfeited for costs."

The plaintiffs in error in this case include only the twenty-two defendants who appeared before the said justice for further hearing March 25, 1926.

At said hearing, one witness was called in behalf of the Commonwealth and two witnesses in behalf of the defendants. At the conclusion of the testimony, the record of the justice contains the following decision: "The justice then publicly stated that he found the following defendants (being the twenty-two defendants above named) guilty of a violation of the Act of April 22, 1794, and fined each of them $4 and costs of $3.67."

The record also shows the following: "Counsel for defendants then stated that his clients would go to jail and requested the justice to issue commitments for each defendant present. The justice then issued commitments for each defendant, and then the counsel for defendants made payment, under protest, of the sum of $7.67 for each defendant."

The record also contains the following: "No informations were made in any of the cases against the defendants. The charges of the law were made by the justice upon complaints and upon view, and not upon information and warrant."

In the record returned by the justice, there appears the following statement, which apparently contains the accusation made against the defendants, to wit: "Be it remembered that on the 21st day of March, 1926, the same being the Lord's Day, commonly called Sunday, at 3 A. M., at the home of Mr. and Mrs. Henry Leonard, known as Leonard's Inn, in Pleasant Valley, Penn Township, County of Westmoreland, and State of Pennsylvania, Justice of the Peace appeared, in company with Constables H. C. Taylor and B. W. Kunkle and Deputy Constables C. Gressler and Glenn N. Welsh, and found the house all lighted up and the inmates engaged in unlawfully indulging in the diversion of dancing with music furnished by hired musicians, accompanied by loud, boisterous talking, crying out to one another and stamping heavily with their feet, all of which is contrary to the Act of Assembly in such cases made and provided, April 22, 1794 (3 Sm. Laws, 177)."

Section 4 of the said Act of April 22, 1794, provides: "Every justice of the peace within his county . . . are hereby empowered . . . to proceed against and punish all persons offending against this act . . . and for that purpose . . . may and shall convict such offenders by his own view and hearing, or shall issue, if need be, a warrant . . . to bring the body of the accused person before him."

Said statute, after providing that said justice shall, in a summary way, inquire into the truth of the accusation and commit the persons so charged, further provides: "Shall proceed to pronounce the forfeiture incurred by the person so convicted . . . and if the person so convicted refuse or neglect to satisfy such forfeiture immediately, with costs, or produce goods or chattels

Torado et al. v. Commonwealth.

whereon to levy said forfeiture, together with costs, then the said justice shall commit the offender without bail . . . to the common jail of the county."

The said statute further provides that: "Every such prosecution shall be commenced within seventy-two hours after the offence shall be committed."

In the instant case, the prosecution was commenced immediately. The hearing held March 25, 1926, was but a continuance of the hearing which was commenced March 21, 1926.

The defendants were arrested in an inn or tavern, and not in a private house. The justice, in framing the charge against the defendants, states that they were engaged in dancing and were making loud and tumultuous noises with their voices and with their feet. However, from an examination of the record of the said justice, it is not clear that the conduct of the defendants in the instant case constituted a breach of the peace. The basis of the charge against the defendants is embraced in that portion of the Act of 1794 which prohibits the use or practice of "any unlawful . . . sport or diversion on Sunday."

Construing the above language of this statute, the Superior Court (Com. v. Coleman, 60 Pa. Superior Ct. 382) says: "A sport may not be unlawful in itself, but if carried on on Sunday in a noisy manner in a public place, it may become unlawful, because disorderly, though it may be carried on during the week with as much or even more noise with perfect propriety. . . . Any sport or diversion whatsoever which actually produces or tends to produce disorder on Sunday so as to disturb the peace of law-abiding citizens of the community, is prohibited by the Act of 1794, which was intended to enable people at large to devote that day to rest and the worship of God."

In the instant case, the justice, in his accusation against the defendants, does not state that the peace of law-abiding citizens of the community was actually disturbed thereby; but there was proof that the conduct of the defendants was tumultuous and disorderly.

At the conclusion of the hearing on March 25, 1926, the justice publicly stated that he "found the defendants guilty of a violation of the Act of April 22, 1794, and fined each of them $4 and $3.67 costs."

This record of the justice, standing alone, is not sufficient to sustain a conviction.

It is well settled that in order to sustain such a conviction it is necessary that the record of conviction should contain a finding that the special act complained of has been performed by the defendant, and that it should describe or define it in such a way as to distinguish it and show that it falls within an unlawful class: Reid v. Wood, 102 Pa. 312; Com. v. Gelbert, 170 Pa. 426; Com. v. Phelps, 170 Pa. 430; Com. v. Nesbit, 34 Pa. 398-403.

The Act of 1794 specifies numerous acts which may not be performed on Sunday. However, the justice, on March 25, 1926, merely found the defendants guilty of "a violation of the Act of April 22, 1794," without specifying which of the acts forbidden therein were committed by the defendants.

If the defendants, after their conviction by the said justice, had pursued their remedy in the manner provided by law, the court would be constrained to hold that the judgment of the justice should be reversed, because the record of conviction at the hearing held March 25, 1926, is defective, in that it does not show that any specific act complained of was performed by any of the defendants.

This brings us to a consideration of the remaining question, viz.: Whether, in the instant case, the Court of Common Pleas has any authority to correct the error complained of.

Torado et al. v. Commonwealth.

Upon application by the plaintiffs in error, the court, on April 1, 1926, allowed the issuance of a writ of *certiorari* to bring the record of said justice before said court for review. The writ was returnable April 19, 1926. The rules of this court require writs of *certiorari* to be served at least ten days before the return-day thereof. Inadvertently, the sheriff neglected to serve the writ until April 10, 1926, and for this reason the justice of the peace moved the court to quash the writ. However, the court (Judge Dom), without disposing of the motion to quash, allowed an *alias* writ, and the justice obeyed that mandate to produce, by certifying a copy of his record to the prothonotary. "A special allowance from the Court of Common Pleas must be had for a writ of *certiorari* to a justice of the peace or alderman in a summary conviction for a violation of the Sunday law:" Com. v. Antone, 22 Pa. Superior Ct. 412.

In the instant case, the order of court specially allowing the writ of *certiorari* was properly made. The only objection is that the sheriff served the writ nine days before the return-day' instead of ten days, as provided by Rule 71 of this court.

In Gaston v. Tsagrinos, 7 D. & C. 23, the question raised is ruled against the contention of the said justice. Ordinarily, in any case, an *alias* writ may be issued where the sheriff neglects to serve the original process within the time required by statute. The motion of the justice to quash the writ of *certiorari* because it was not served ten days before the return-day thereof is overruled.

However, the record shows that immediately after the justice had pronounced the defendants guilty of a violation of the Act of April 22, 1794, and directed each defendant to pay a fine of $4 and $3.67 costs, the defendants' counsel, in their presence and acting in their behalf, "stated that his clients would go to jail, and requested that commitments be issued for each defendant present, and the justice accordingly issued such commitments, and then the counsel for defendants made payment, under protest, of the sum of $7.67 for each defendant."

Thus the defendants clearly waived their right to "produce goods and chattels whereon to levy the said forfeiture together with costs."

The appellate courts of Pennsylvania have many times decided that when a defendant who has been convicted and sentenced under the Act of April 22, 1794, voluntarily pays the fine and costs, the Court of Common Pleas has no power on *certiorari* subsequently to reverse the judgment and order restitution: Com. v. Gipner, 118 Pa. 379; Com. v. Yocum, 37 Pa. Superior Ct. 237; Haverford v. Armstrong, 76 Pa. Superior Ct. 152.

"Where a defendant was summarily convicted by a magistrate for disorderly conduct and paid his fine 'under protest' before taking his appeal, the appeal will be quashed:" McKeesport v. Dunn, 83 Pa. Superior Ct. 194.

In the above case, the court (opinion page 196) say: "If appellant desired a review of a summary proceeding, he should not have ended it by complying with the sentence. He should have complied with the Act of July 11, 1917, P. L. 771, governing the reviews in such cases; he could not disregard the statute by substituting a method in his judgment more convenient. . . . Instead of pursuing the method so specified, he avers he paid the fine 'under protest.' . . . Such protest has no legal meaning, and furnishes no reason for allowing an appeal to the Quarter Sessions . . . and does not render compliance with a sentence within the legal power of the magistrate any less voluntary than compliance without protest. . . . The court found that the magistrate, in exercising the power vested in him to impose a jail sentence in

Torado et al. v. Commonwealth.

default of the payment of a fine, did not render the payment less voluntary in the legal sense. . . . The appeal is quashed."

In Haverford Township v. Armstrong, 76 Pa. Superior Ct. 152, the justice of the peace imposed a fine of $25 upon the defendant, while the statute in question provided that the fine should not exceed $10. The defendant paid the fine of $25 and afterwards brought the record to the Court of Common Pleas for review upon a writ of certiorari. The Court of Common Pleas modified the judgment of the justice by reducing the fine to $10.

On appeal, the Superior Court (opinion page 155) says: "We think the certiorari should have been quashed. The payment of the fine and costs was voluntary, and that ended the matter. . . . The judgment of the court is reversed and the record remanded with instructions that the writ of certiorari be quashed."

If the defendants, instead of applying for a writ of certiorari, had applied for an allowance of an appeal to the Court of Quarter Sessions within five days after their conviction, their payment of the fine and costs imposed by the justice would not have been a barrier: Act of April 1, 1925, P. L. 98, amending the Act of April 17, 1876, P. L. 29, as amended by the Act of July 11, 1917, P. L. 771.

The statutes above mentioned are not in terms applicable to writs of certiorari, but if such statutes should be considered to embrace writs of certiorari, the application to the court must be made within five days after the judgment or conviction complained of. Here, the defendants were convicted March 25, 1926. The writ of certiorari was not applied for until April 1, 1926.

If the defendants, by writ of habeas corpus, had raised the question of the legality of their arrest on Sunday, the court would be required to decide that issue: York City v. Hatterer, 48 Pa. Superior Ct. 216; Com. v. Brennan, 193 Pa. 567; Com. v. Keegan, 70 Pa. Superior Ct. 436.

If it be true that the justice or the constable imprisoned or arrested the defendants in violation of the Act of Jan. 12, 1705, 1 Sm. Laws, 25, the law affords appropriate redress therefor: Wanner v. Buch, 1 D. & C. 665; Wanner v. Danner, 1 D. & C. 666; Com. v. Eyre, 1 S. & R. 347; Com. v. Schwartz, 82 Pa. Superior Ct. 369-379.

One hundred eleven years ago the Supreme Court, in Com. v. Eyre, 1 S. & R. 347, speaking of a somewhat similar situation, said: "The violation of the Sabbath is a crime which deserves punishment. . . . The serving of legal process on Sunday tends to disturb the quiet of that day, which is the object of the law on which this prosecution is founded, to protect. . . . Therefore, it is that the serving of all legal process is forbidden by another act (1 Sm. Laws, 23, Act of Jan. 12, 1705), except in cases of treason, felony or breach of the peace."

These words should serve as a friendly admonition, not only to the citizen to observe the law, but also to the officer of the law to refrain from breaches thereof in the performance of his official duties.

And now, July 24, 1926, after arguments of counsel and upon due consideration, it appearing to the court that the plaintiffs in error after their conviction and sentence for a violation of the Act of April 22, 1794, voluntarily paid the fine and costs imposed by the justice of the peace who presided at the trial thereof, it follows that the court has no authority to reverse said judgment on a writ of certiorari. The assignments of error are overruled, and it is, therefore, ordered that the said writ of certiorari be and the same is hereby quashed.

From William S. Rial, Greensburg, Pa.