## Keith v. Aetna Life and Casualty Company

*John R. Badal,* for petitioner.
*Harry W. Reed, Jr.,* for respondent.

ESHELMAN, *P.J.,* March 20, 1980—Gary L.

Keith (hereinafter petitioner) has filed a petition for declaratory judgment to which Aetna Life and Casualty Company (hereinafter respondent) filed an answer with new matter. Petitioner then filed preliminary objections to respondent's answer and new matter.

Subsequently, the parties entered into a stipulation whereby they agreed that all pleadings filed to date would be held in a status quo, and that the case would proceed upon a set of stipulated facts. The facts are deemed admitted by the parties solely as the basis for a determination of the declaratory judgment petition.

The relevant admissions include the following facts: that on or about February 25, 1977, respondent issued a personal automobile policy of insurance upon an application duly made by petitioner for a period of three months running from February 25, 1977 to May 25, 1977; that the said policy provided uninsured motorists coverage of $35,000 per accident; that on or about March 22, 1977, petitioner was a passenger on a 1972 Yamaha motorcycle which was being operated by an uninsured motorist, Ricky R. Boas, in a westerly direction on East Main Street in Adamstown, Lancaster County, Pa.; that at the aforesaid time and place, an insured driver, Harold B. Wanner, was operating his 1969 Chevrolet automobile in an easterly direction; that either as a result of the sole negligence of the uninsured motorist Boas or the joint negligence of Boas and the insured motorist Wanner, the motorcycle on which petitioner was a passenger collided with the automobile driven by Wanner; that petitioner suffered massive personal injuries as a result of the collision; that Wanner's insurer, Donegal Insurance Company, consistently

denied any liability on the part of Wanner, but Donegal did enter into a settlement with the petitioner and his parents in the amount of $100,000, the policy limit of Wanner's liability coverage; that the said settlement was entered into without the permission or the consent of respondent; that petitioner has made demand upon respondent for uninsured motorists benefits under his policy in the amount of $35,000, the policy limit; that respondent has refused to make any payment to the petitioner under the uninsured motorists coverage; and that petitioner's damages resulting from the said collision exceed the total of the amounts of uninsured motorists coverage provided by the policy with respondent and that received from the settlement with the insured motorist Wanner.

Following the filing of the stipulation, petitioner moved for summary judgment.[1] That motion has been briefed, argued and is now before this court for disposition.

As stipulated by the parties, the issues to be determined by this court are as follows: (1) whether petitioner's uninsured motorists coverage under

1. Pa.R.C.P. 1601(a), effective February 1, 1980, provides in part that the rules governing an action in equity shall apply to an action for declaratory relief. Pursuant to Pa.R.C.P. 1501, "the procedure in an action in equity shall be in accordance with the rules relating to the action of assumpsit." Therefore, a motion for summary judgment under Pa.R.C.P. 1035 is a proper vehicle by which the court may review the stipulated facts and determine whether to grant the relief requested by the petition for declaratory judgment as a matter of law. See Insurance Co. of North America v. Stein, 5 D. & C. 3d 508 (1977), aff'd mem., 254 Pa. Superior Ct. 619, 387 A. 2d 118 (1978) (summary judgment entered on a petition for declaratory judgment under prior procedure).

his policy with the respondent provides coverage in the stipulated factual situation; (2) if the policy does not provide such coverage, then whether such coverage is required of respondent under the Uninsured Motorists Act (hereinafter act)[2]; and (3) if neither the policy nor the act require such coverage, then whether the coverage is mandated by public policy. Further, as part of the parties' stipulation, petitioner has withdrawn his request for a monetary judgment.

Respondent poses two arguments in defense of its position that petitioner's policy does not provide coverage in the instant matter. First, respondent points to the following policy exclusion:

"A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person: . . .

"2. If that person or the legal representative settles the bodily injury claim without our consent. . . ."

Since petitioner's claim against the insured motorist, Wanner, was settled without respondent's consent, respondent argues that petitioner is excluded from receiving *any* recovery under respondent's uninsured motorists coverage. Respondent cites section 2000(e)(2) of the act as authorizing the policy's exclusion. The section provides: "(e) The coverage required by this section does not apply:. . . (2) To bodily injury sustained by the insured with respect to which the insured or his representative shall, without the written consent of

---

2. Act of August 14, 1963, P.L. 909, sec. 1, as amended, December 19, 1968, P.L. 1254, sec. 1, 40 P.S. §2000.

the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor." (Footnote omitted.)

Interpretation of an insurance policy is a question of law for the court: Adelman v. State Farm Mutual Automobile Insurance Co., 255 Pa. Superior Ct. 116, 386 A. 2d 535 (1978). "The tendency has been that if we should err in ascertaining . . . the intendment of an insurance policy, we should err in favor of coverage for the insured." Heffner v. Allstate Insurance Co., _____ Pa. Superior Ct. _____, _____, 401 A. 2d 1160, 1162-63 (1979). (Footnote omitted.)

An insurer is not prevented from affording uninsured motorists coverage under terms and conditions more favorable to the insured than are provided in the act: 40 P.S. §2000(f). Without reaching the question of whether the act requires coverage to petitioner, we conclude that petitioner is afforded coverage under the policy despite his settlement with the insured motorist.

Under the policy exclusion, coverage is denied if the insured has settled "the bodily injury claim" without respondent's consent. The scope of the language "the bodily injury claim" is determined by reference to the first paragraph of the policy's Part C, Uninsured Motorists Coverage:

"We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury sustained by a *covered person* and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *uninsured motor vehicle*." (Emphasis in original.)

Taken in the context of the entire policy, "the bodily injury claim" must be construed to mean that claim arising out of the operation of the uninsured motor vehicle and against the uninsured motorist. Accordingly, the exclusion clause would only apply in the instant matter if petitioner had entered into a settlement with regard to his claim against Boas, the uninsured motorist. Having settled instead his claim against the insured driver, the exclusion clause has not been triggered, and the settlement does not deny petitioner his uninsured motorists coverage.

Nevertheless, respondent argues that petitioner's settlement constitutes interference with the insurer's right of subrogation. However, as defined, the right of "subrogation" is not as broad as respondent contends. "Subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other." Olin Corporation (Plastics Division) v. Workmen's Compensation Appeal Board, 14 Pa. Commonwealth Ct. 603, 608, 324 A. 2d 813, 816 (1974). "The principle (of subrogation) has been applied in many cases, all of which rest on the foundation that a person, under some sort of compulsion or in protection of his property or credit, has been compelled to pay that which was the primary liability of another person." Vogue Co. v. John C. Winston Co., 76 Pa. Superior Ct. 158, 160 (1921).

In Johnston v. Springfield Dodge, Inc., 5 D. & C. 3d 47, 52, 65 Del. Co. 191, 194 (1978), the court determined that the right of subrogation possessed by an insurer providing uninsured motorists coverage is limited as against only the uninsured motorist, reasoning as follows:

"The obligation of an insurance carrier under the

uninsured motorist provisions is to provide its insured with coverage for damages sustained as a result of the negligence of an uninsured or unidentified automobile . . . Its subrogation rights are limited to such uninsured automobile or unidentified automobile. That is the basis for its obligation. It acquires no rights against an insured driver who is also involved in the same transaction." See Rhault v. Tsagarakos, 361 F. Supp. 202, 207, fn. 3 (D.Vt. 1973). We conclude that respondent has no right of subrogation against Wanner or his insurer.

Respondent does not allege that it has been prejudiced in any other way by the settlement, and it is difficult to conceive of any such prejudice. In Hebert v. Green, 311 So. 2d 223 (La. 1975), the court was confronted with a policy exclusion clause similar in language to section 2000(e)(2) of the act. Plaintiff in Hebert had been a passenger in a truck which was involved in a three-vehicle accident. Of the other two vehicles, one driver was insured and the other was uninsured. Plaintiff settled his claim against the insured driver. With regard to his claim against the uninsured driver he then sought recovery under the uninsured motorists coverage provided by the policy insuring the vehicle in which he was a passenger. As in the instant action, the insurer refused coverage because of the settlement without its consent. The Louisiana Supreme Court analyzed whether the insurer was prejudiced by the settlement, but found no prejudice and concluded that the exclusion served no legitimate purpose and was invalid as applied to a situation where the settlement was with the insured tortfeasor and not the uninsured tortfeasor.

The Hebert court's method of analysis is persuasive, and we apply it to the instant action. If Wanner

is later found to be the only one negligent in causing the collision, then respondent is not accountable under its uninsured motorists coverage. However, if Boas is found to be the only one negligent, then respondent would be accountable under the uninsured motorists coverage and would have no reason to complain of the gratuitous or collateral recovery by petitioner as a result of the settlement. Such a gratuity would have no effect on the liability of either Boas or respondent. If Wanner and Boas are jointly negligent, respondent would be accountable to petitioner but only to the extent, within the policy limits, that petitioner is "legally entitled to recover" from Boas. Therefore, respondent has not been prejudiced by the settlement.

Since petitioner's policy with respondent, by its terms, does not exclude uninsured motorists coverage in the event of a settlement with someone other than the uninsured motorist and because no prejudice to respondent results from such a settlement, uninsured motorists coverage cannot be denied petitioner on the basis of the settlement. Having decided that the policy does provide coverage, it is not necessary to consider whether the act or public policy requires providing coverage in the event of such a settlement.[3]

---

3. There is authority in other jurisdictions that exclusion clauses are invalid as against public policy when coverage is excluded because of settlement with a person other than the uninsured driver: Wescott v. Allstate Insurance, 397 A. 2d 156 (Me. 1979); Craig v. Iowa Kemper Mutual Insurance Co., 565 S.W. 2d 716 (Mo. App. 1978); Government Employees Insurance Co. v. Shara, 137 N.J. Super. 142, 348 A. 2d 212 (1975); Hawaiian Insurance & Guaranty Co. v. Mead, 14 Wash. App. 43, 538 P. 2d 865 (1975); Alabama Farm Bureau Mutual

Secondly, respondent argues that petitioner is not entitled to recover under the uninsured motorists coverage because of the following provision contained in Part C of the policy under the section entitled "LIMIT OF LIABILITY."

"The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of *covered persons*, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident. (Emphasis in original.)

"Any *amounts otherwise payable* for damages under this coverage shall be reduced by:

"1. [A]ll sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. . . ." (Emphasis supplied.)

Respondent cites section 2000(d) of the act as authorizing the above-quoted policy provisions:

"In the event of payment to any person under the coverage required by this section, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer."

Casualty Insurance Co. v. Clem, 49 Ala. App. 457, 273 So. 2d 218 (1973); Rhault v. Tsagarakos, 361 F. Supp. 202 (D. Vt. 1973); Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So. 2d 456 (Miss. 1971); American Motorists Insurance Co. v. Thompson, 253 Ore. 76, 453 P. 2d 164 (1969).

The limit of liability as shown on the declarations page of the within policy is $35,000. It is respondent's argument that the "amounts otherwise payable" (under Part C, LIMIT OF LIABILITY) is the $35,000, that such amount must then be reduced by the $100,000 paid on behalf of Wanner, and, as a result, that any uninsured motorists coverage owed to petitioner would be reduced to zero.

Petitioner counters by arguing that the "amounts otherwise payable" should be interpreted instead to mean those amounts payable if there were no limits of liability. It is petitioner's argument that the set-off exclusion modifies the clause "We will pay damages . . . sustained by a *covered person* and caused by an accident" as contained in Part C's first paragraph which is quoted above. Therefore, following petitioner's argument, the $100,000 should be set off from petitioner's total damages resulting from the collision and not set off from the policy's limit of liability. Petitioner contends that the use of the word "otherwise" requires such an interpretation.

As support for his argument, petitioner cites Michigan Mutual Liability Co. v. Karsten, 13 Mich. App. 46, 163 N.W. 2d 670 (1968), wherein the court was called upon to interpret the following policy provisions: "(b) *Any amount payable* under the terms of this Part . . . shall be reduced by (1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable. . . ." The court concluded that in a factual situation similar to the instant action the amount obtained by settlement with a party not the uninsured motorist "must be subtracted from the *total damages* arising out of

the accident." Michigan Mutual Liability Co. v. Karsten, 13 Mich. App. at 51, 163 N.W. 2d at 672. (Emphasis supplied.)

A commentary provided in Widiss, Uninsured Motorists Coverage, §8.1, 283 (1969), further supports such an interpretation of the set-off clause: "Such provisions are justifiable where indemnification has been complete, but their propriety seems highly suspect when invoked by an insurance company to avoid liability when the claimant has not been fully compensated." Accord, Raitt v. National Grange Mutual Insurance Co., 111 N.H. 397, 285 A. 2d 799, 802 (1971). As stipulated by the parties, petitioner would not receive duplicate recovery even if he recovered the entire $35,000 from respondent.

As another means of analyzing the issue, the structure of the policy and the arrangement of its various clauses can determine the intent of the set-off clause: McKoy v. Aetna Casualty & Surety Co., Inc., 281 Md. 26, 374 A. 2d 1170 (1977). Examining the within policy's "LIMIT OF LIABILITY" section, there is no indication that the paragraph beginning "Any amounts otherwise payable" is subordinated in any way to the paragraph beginning "The limit of liability. . . ." Each clause stands on equal footing, and each can be viewed as independently modifying the very first paragraph of Part C, beginning, "We will pay damages. . . ." See McKoy v. Aetna Casualty & Surety Co., Inc., supra; Langston v. Allstate Insurance Co., 40 Md. App. 414, 392 A. 2d 561 (1978).

Therefore, for all of the above reasons, we conclude that the clause at issue provides a set-off against the total damages sustained by the petitioner and not against the $35,000. Even assuming

that the interpretation offered by the respondent is equally reasonable, the court is required to adopt the interpretation which affords the widest coverage for the insured: Shamey v. State Farm Mutual Automobile Ins. Co., 229 Pa. Superior Ct. 215, 331 A. 2d 498 (1974).

Although further discussion is not required, consideration of the act further demonstrates the correctness of our conclusion. The intent of the act is to provide recovery for an insured for those damages which he would have received had the uninsured motorist maintained liability insurance: Day v. State Farm Mutual Insurance Co., 261 Pa. Superior Ct. 216, 396 A. 2d 3 (1978); Adelman v. State Farm Mutual Automobile Insurance Co., supra; Bankes v. State Farm Mutual Automobile Insurance Co., 216 Pa. Superior Ct. 162, 264 A. 2d 197 (1970). The act is to be construed so that protection is provided innocent victims of irresponsible drivers: Harleysville Mutual Casualty Co. v. Blumling, 429 Pa. 389, 241 A. 2d 112 (1968); Shamey v. State Farm Mutual Automobile Insurance Co., supra.

Pursuant to the act, the Pennsylvania Insurance Commission mandates that the *minimum* amount of uninsured motorists coverage be $15,000 per person and $30,000 per accident: 31 Pa. Code §66.1-104(a). Because of the act's intent to maximize the protection available to victims of uninsured motorists, set-off clauses which thwart this purpose are not to be enforced. See Brader v. Nationwide Mutual Insurance Co., ___ Pa. Superior Ct. ___, 411 A. 2d 516 (1979).

Being required to liberally construe the act and to view it as mandating recovery which the insured would have received had the uninsured motorist maintained liability insurance, the act cannot be

interpreted in such a fashion as to permit the carrier, in the absence of double recovery, to diminish coverage to zero.

Nevertheless, respondent argues that section 2000(d) of the act, quoted above, permits such a set-off clause. However, the section, when properly interpreted, provides no support for respondent's argument. Assuming respondent has paid petitioner uninsured motorists benefits under its policy, the respondent, having made "such payment shall . . . be entitled to the proceeds of any settlement . . . against *any person . . . legally responsible* for the bodily injury *for which such payment* is made. . . ." (Emphasis supplied.) In the instant action respondent's payment of benefits to petitioner can only result from the legal responsibility of Boas, the uninsured motorist. Any responsibility borne by Wanner for petitioner's injuries does not obligate respondent to make "such payment." Respondent's rights under section 2000(d) are only against the person "legally responsible" for "such payment." Accordingly, the section does not authorize respondent to set off the $100,000 settlement paid on behalf of Wanner.

In Rhault v. Tsagarakos, supra, the district court considered a policy clause almost identical to section 2000(d) and concluded that to permit a reduction in coverage to zero is offensive and invalid. The court further reasoned at p. 207:

"As in any multi-defendant action, any sum recovered prior to judgment from one defendant will be credited against the total judgment after damages are assessed. The [uninsured motorist carrier's] liability cannot be determined until the total amount of the [insured's] damages are known and

550

for what part of such recovery, if any, the [uninsured] motorist is legally responsible."

Petitioner's motion for summary judgment must be granted.

## ORDER

And now, March 20, 1980, it is hereby ordered that declaratory judgment is entered in favor of petitioner in that petitioner's uninsured motorists coverage under his insurance policy issued by respondent does provide coverage under the stipulated facts; and petitioner's motion for summary judgment is granted.