[No. 354-2.    Division Two.    October 13, 1971.]

SHILA A. FUGERE, *Appellant,* v. OSCAR E. PIERCE, JR., *et al.,* *Respondents.*

*Gordon R. Tobin* (of *Bianchi, Tobin & Rinaldi*), for appellant.

*Patrick C. Comfort* (of *Comfort, Dolack, Hansler & Billett*), for respondents.

ARMSTRONG, J.—This is an action to recover damages for personal injuries arising out of a 3-car collision. In the trial court the jury returned a verdict in favor of the plaintiff for $2,500, which was substantially less than the special damages. Plaintiff now appeals from the judgment and a denial of a motion for a new trial.

The record presents the following issues: (1) May plaintiff, who has suffered injuries as a result of two accidents

occurring almost simultaneously, caused by independent tort-feasors, such injuries being incapable of any logical and reasonable apportionment, obtain a judgment against each tort-feasor for the full amount of the damages sustained? We hold that she can. (2) Where the tortious conduct of two independent tort-feasors has combined to bring about a harm to the plaintiff, does the burden of proving an apportionment of damages on the grounds that the harm is capable of apportionment rest upon the defendant claiming the damages are capable of apportionment? We hold that it does. (3) Was there substantial evidence that the damages were capable of a logical and reasonable apportionment? We hold that there was not.

On November 7, 1968 at approximately 7:30 p.m., the plaintiff and her passenger were involved in a 3-car, 2-stage collision in the general vicinity of Bonney Lake, Washington. At the time of the accident, the plaintiff's vehicle was proceeding in an easterly direction up Ehli Hill Road on state Highway 410. Driving conditions were poor due to heavy rain, wet pavement and total darkness.

Plaintiff's car was initially struck by an oncoming car driven by a third party, and then subsequently struck, from 1 to 3 seconds later, on the left side, at or near the front door, by the defendant's car which had been following plaintiff. Each witness who observed the oncoming car, owned by one Lopez, stated that the Lopez car did not have front-end damage but did have substantial damage to the right rear fender, wheel and tire. Plaintiff stated that she did not see the oncoming car until it loomed up in front of her, struck her left front fender and threw her car sideways. Plaintiff's automobile had damage to the left front fender, bumper, grill and hood. Defendant Pierce, who was following plaintiff, saw the Lopez car go out of control and cross into plaintiff's lane.

Plaintiff stated that prior to the collision she noticed in her rearview mirror that a car about a quarter of a mile back was approaching at a fast rate of speed. She asked her passenger to turn around and take a look at the approach-

ing vehicle. The approaching vehicle came up to within one car length, flashed his lights on high and low beam, and then dropped back to about two car lengths. This procedure was repeated three or four times. They estimated the following car's speed at 40 miles per hour at the time of the collision. Defendant denied this behavior and contended that he was following plaintiff at 40 miles per hour and reduced to 10 miles per hour at the time of the collision.

Plaintiff testified that she could not remember what happened to her in the first impact because everything happened so fast. She stated that the second impact on her left front door was more severe than the first impact and she specifically recalled going forward into the steering wheel and hitting her abdomen, forehead and hand as a result of the second accident. Plaintiff's passenger testified that she recalled going forward, backward and sideways as a result of the second collision, which she felt was harder than the first.

Plaintiff's physician, Dr. Michael Lovezzola, testified that as a result of the accident, plaintiff sustained a laceration or tearing of the top of her liver that was 6 inches long, 2 or 3 inches deep, and 1 inch wide. She also sustained injury to the small finger of her left hand, which left some permanent disability, an injury to her lip, and broke her dentures. When asked about the cause of the injuries, Dr. Lovezzola answered: "All the findings were of the type that go with a severe blow to the abdomen, such as would occur in an auto accident."

On cross-examination of Dr. Lovezzola, the following questions and answers appear:

Q  Did she not indicate that there were two accidents, one a head-on collision with one car and then also a rear end collision with the second car?

A  Yes, sir.

Q  Based upon the history that you took from the patient in this regard, would you not conclude that the damage to the liver was done as a result of the impact in the head-on collision . . . the first collision, and the striking of the plaintiff against the steering wheel

as a result of that first collision as opposed to the second?

A I don't think I could answer that very well.

. . .

Q In your experience have you not found that in a head-on collision that the person who is seated behind the driver's wheel more than likely is thrown forward?

A That's right.

Q And that if we had to determine whether it was a head-on collision or the subsequent rear end collision that throws a person forward into the steering wheel, would you not agree with me it is more likely that it is a head-on collision rather than the subsequent rear end collision that causes this type of force?

A I would say yes to that.

The jury returned a verdict for $2,500, which was substantially less than the special damages. The plaintiff's motion for a new trial restricted to the issue of damages was denied and she now appeals from the judgment and order denying her motion for a new trial.

On appeal, plaintiff includes within her assignments of error the giving of the following instruction, allowing a segregation of damages:

INSTRUCTION No. 15

You are instructed that if you find defendant Oscar E. Pierce, Jr. negligent and that such negligence proximately caused injuries or damages to the plaintiff, defendants are liable to the plaintiff for such injuries and damages of plaintiff which were proximately caused by such negligence. However, defendants are not liable for any injury or damages sustained by plaintiff which were proximately caused by the negligence of some person other than the defendants.

This state has never confronted the issue before us involving two separate and distinct vehicular impacts, the second immediately following the first, caused by the independent wrongful acts of two successive tort-feasors and producing in all practical effects a single, indivisible injury. *Young v. Dille,* 127 Wash. 398, 220 P. 782 (1923) was very

close to this situation, but in that case the pleadings and evidence showed that separate injuries resulted from separate negligent acts of two motorists who successively collided with plaintiff's automobile. The injuries attributed to each successive tort-feasor were capable of definite measurement. The court stated at page 404:

> To be joint tort feasors, the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury.

Strong dictum also appears in *Madigan v. Teague,* 55 Wn.2d 498, 348 P.2d 403 (1960). In a footnote on page 502, Justice Rosellini stated:

> There is language in *Hufford v. Cicovich,* 47 Wn.(2d) 905, 290 P.(2d) 709, which suggests that this court would be inclined to adopt the California rule of *Summers v. Tice,* 33 Cal.(2d) 80, 199 P.(2d) 1, 5 A. L. R.(2d) 91, imposing joint and several liability when plaintiff's evidence tends to show that it is impossible to segregate the damage caused by independent tort-feasors, but giving the latter the opportunity to apportion the damage if they can.

Although recovery was denied the plaintiff in *Scott v. Rainbow Ambulance Serv., Inc.,* 75 Wn.2d 494, 452 P.2d 220 (1969), the court stated at page 497:

> We are concerned with a single injury, one claimed tort-feasor and a plaintiff who apparently contributed to the single injury through her own fault. This material fault of the plaintiff, contributing substantially to the single injury, removes this case from that field of lawsuits where the legal principles applied were appropriate to the situation of an innocent plaintiff faced with multiple wrongdoers. There is a tendency in the latter cases to relax the usual rule that the burden of proof as to causation is upon the plaintiff. The reason is apparent: should the loss due to failure of proof of causation fall upon the innocent or the culpable? It is reasoned that it is unfair to deny an innocent person redress simply because he cannot prove how much of the damage each tort-feasor caused, when it is certain that between them they caused it all.

Additionally, *Smith v. Rodene,* 69 Wn.2d 482, 418 P.2d

741 (1966) seemingly indicated that it would favor an adoption of the single injury theory if presented with an opportunity to do so. The *Smith* decision involved an action arising out of two separate and distinct automobile collisions, the first collision occurring in September, 1962, and the second collision some 7 months later in May of 1963. In light of the wide separation both in time and distance between the two collisions the facts in *Smith* are clearly distinguishable from the instant case. Nevertheless, it is significant to note that in its treatment of the central issue the court stated at page 484:

> Absent are the factors which give rise to joint tort liability. There was neither concert of action nor independent torts uniting to cause a single injury. *Young v. Dille,* 127 Wash. 398, 220 Pac. 782 (1923). Nor is this a multiple-collision case in which "joint" liability is often imposed. See *Maddux v. Donaldson,* 362 Mich. 425, 108 N.W.2d 33 (1961), and an extensive annotation in 100 A.L.R.2d 16.

Although there is substantial authority to support the traditional viewpoint, which is expressed in the trial court's instruction, we do not believe that it fits the chain collision, successive impact situation which frequently occurs today. From a practical standpoint, where a plaintiff has been involved in two or more successive impacts, it is frequently impossible to make a reasonable determination of which tort-feasor caused the injury. To instruct the jury that the plaintiff has the burden of proving which tort-feasor caused the injury in cases in which it is not reasonably possible to apportion damages is merely an invitation to speculate. It places upon the innocent plaintiff a burden of proof that is frequently impossible to sustain.

The majority view in our country in cases similar to the instant one, where there are collisions in rapid succession producing a single end result, and no substantial proof as to what damage was caused by each collision, is to hold each tort-feasor jointly and severally liable. *See* Annot., 100 A.L.R.2d 16 (1965). Although independent tort-feasors generally are not jointly and severally liable where their acts caused distinct and separate injuries, or

where some reasonable means of apportioning the damages is evident, the negligent driver of an automobile in the successive impact has been held jointly and severally liable for all of plaintiff's injuries if the injuries are "indivisible" and the liability therefor cannot be allocated with reasonable certainty to the successive collisions. This has come to be known as the "single indivisible injury rule." *Maddux v. Donaldson*, 362 Mich. 425, 108 N.W.2d 33, 100 A.L.R.2d 1 (1961); *Mathews v. Mills*, 288 Minn. 16, 178 N.W.2d 841 (1970). Additional authorities are cited in the footnote.[1]

The "single indivisible injury" rule becomes viable only upon a determination of where the burden of proof of capability of apportionment lies. In this respect, we feel that the rule adopted in Restatement (Second) of Torts § 433B(2), at 441 (1965) is the one by which we should be governed. This section provides:

Where the tortious conduct of two or more actors has

---

[1]*Cummings v. Kendall*, 41 Cal. App. 2d 549, 107 P.2d 282 (1941); *Summers v. Tice*, 33 Cal. 2d 80, 199 P.2d 1, 5 A.L.R.2d 91 (1948); *Copley v. Putter*, 93 Cal. App. 2d 453, 207 P.2d 876 (1949); *Eramdjian v. Interstate Bakery Corp.*, 153 Cal. App. 2d 590, 315 P.2d 19 (1957); *Oakes v. McCarthy Co.*, 267 Cal. App. 2d 231, 73 Cal. Rptr. 127 (1968); *Reed v. Mai*, 171 Kan. 169, 231 P.2d 227 (1951); *Murphy v. Taxicabs of Louisville, Inc.*, 330 S.W.2d 395 (Ky. 1959); *Ruud v. Grimm*, 252 Iowa 1266, 110 N.W.2d 321 (1961); *Brantley v. Couch*, 383 S.W.2d 307 (Mo. App. 1964); *Watts v. Smith*, 375 Mich. 120, 134 N.W.2d 194 (1965); *Holtz v. Holder*, 101 Ariz. 247, 418 P.2d 584 (1966); *Coles v. Galloway*, 7 Mich. App. 93, 151 N.W.2d 229 (1967); *Dickenson v. Tabb*, 208 Va. 184, 156 S.E.2d 795 (1967); *Hill v. Macomber*, 103 N.J. Super. 127, 246 A.2d 731 (1968); 1 F. Harper & F. James, Torts § 10.1 (1956); 2 F. Harper & F. James, Torts § 20.3 (1956); W. Prosser, Torts §§ 45 and 46 (2d ed. 1955); W. Prosser, Torts § 42 (3d ed. 1964); J. Wigmore, *Joint Tort-Feasors and Severance of Damages; Making the Innocent Party Suffer Without Redress*, 17 Ill. L. Rev. 458 (1923); Comment, M. Gendel, *Torts: Concurrent But Independent Wrongdoers: Joint Liability for Entire Damages*, 19 Cal. L. Rev. 630 (1931); W. Prosser, *Joint Torts and Several Liability*, 25 Cal. L. Rev. 413 (1937); R. Jackson, *Joint Torts and Several Liability*, 17 Tex. L. Rev. 399 (1939); Note, R. Ledford, *Torts—Independent Tort-Feasors—Joint and Several Liability*, 31 N.C. L. Rev. 237 (1953); 9 A.L.R. 939 (1924); 35 A.L.R. 409 (1925); 91 A.L.R. 759 (1934); 100 A.L.R.2d 16 (1936); 65 C.J.S. *Negligence* § 103, 1130-35 (1966); 86 C.J.S. *Torts* §§ 34, 35 (1954); 38 Am. Jur. *Negligence* § 257 (1941); 52 Am. Jur. *Torts* §§ 110-12 (1944); Restatement of Torts § 879, at 446 (1939).

combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

*Accord: Maddux v. Donaldson, supra; Mathews v. Mills, supra.*

Thus, in a multiple impact situation, where the conduct of two or more automobile drivers combines to bring about harm to the plaintiff, the burden of proving that the harm can be separated falls upon those defendants who contend that it can be apportioned.

If there is competent testimony, adduced either by plaintiff or defendant, that the plaintiff's injuries are factually and medically capable of apportionment, and that they may be allocated with reasonable certainty to the individual impacts, the apportionment becomes a question for the jury. *Maddux v. Donaldson, supra.*

Defendant maintains a strong argument against the rule set forth in this opinion, but next contends that even if the court should adopt this rule there was substantial evidence to justify the trial court's submission of the issue of apportionment of damages to the jury. We disagree.

Defendant's argument is that the jury could consider the physical evidence, the fact that the oncoming car was traveling at a speed of at least 60 miles per hour and the plaintiff's car was traveling at a rate of 40 miles per hour (totaling an impact at 100 miles per hour), and the opinion of the doctor that it is more likely that a head-on collision would throw a person forward into the steering wheel than a rear-end collision.

The evidence of every witness who testified about damage to the oncoming car verified the fact that the oncoming (Lopez) car had no front end damage. It is not possible to explain the exact dynamics of the collision, but the evidence strongly indicates that the oncoming car was in a spin across the road in front of plaintiff's car. The oncoming car was damaged in the right rear fender and wheel. It appeared from the pictures and the testimony that it first

struck plaintiff's left front fender and then caused bumper, hood and grill damage to the front end of plaintiff's automobile. The engine of plaintiff's automobile was not damaged. The lack of serious damage to the oncoming (Lopez) car was further demonstrated by the fact that the driver of the oncoming car helped the defendant out of his vehicle after the accident.

The following car, driven by defendant, was damaged on the right front fender, the bumper and a little bit of the grill. This physical evidence, together with the pictures, corroborates plaintiff's statement that the following car struck her left front door.

There was no testimony of what happened to plaintiff in the first accident except that from Dr. Lovezzola's experience a person seated behind the driver's wheel in a head-on collision is likely to be thrown forward and it is more likely that a head-on collision would throw a person forward than a rear-end collision. The evidence clearly demonstrates, however, that this was not a head-on collision in the usual sense that the front of the automobiles are driven together into the collision. Although defendant was driving the following car, it was not a rear-end collision. The doctor's premise was incorrect. In any event, he did not express an opinion that the liver damage was caused by the first impact.

Defendant contends that plaintiff's proposed instructions did not support the theory of the case he proposed because he proposed no instructions on apportionment. It was not necessary to propose instructions on apportionment because there was no substantial evidence from which the jury could have determined (1) in which collision plaintiff sustained the liver laceration, or (2) whether the liver was damaged or lacerated in the first collision and further damaged or lacerated to a greater degree in the second collision. The plaintiff could not know and her doctor did not know. Furthermore, the jury could not determine the causation from the physical facts which may have created inferences because such a determination is beyond the common

knowledge of the average man under the facts of this case.[2]

Certain injuries, by their very nature, are incapable of any logical and reasonable apportionment. A lacerated liver caused by being thrown into a steering wheel by the successive collisions described in this case is such an injury. We must conclude that defendant has not sustained the burden of proving by substantial evidence that the damages could be apportioned with any reasonable degree of certainty. The trial court erred in submitting instruction No. 15, which, in effect, directed the jury to apportion the damages.

■ We turn now to the nature of the new trial that must be granted. The sole issues on appeal related to apportionment of damages. Although disputed, plaintiff presented a strong case of liability. Defendant had the advantage of an emergency instruction. Contributory negligence of the plaintiff was not in issue. The inadequate verdict can easily be explained on the basis of the jury's attempt to apportion the damages. The verdict of $2,500 would have been reasonable for the damage to the left front door and left side of plaintiff's car and the injury to the small finger on her left hand. There is no indication that it was a compromise verdict on the issue of liability. The issues of liability and damages were clearly separate and distinct. Under all of the circumstances prevailing in this case the interests of justice would be best served by limiting the new trial to the issue of the damages proximately caused by the multiple-car collision.

The judgment is reversed and a new trial granted.

PETRIE, C.J., and SWANSON, J., concur.

Petition for rehearing denied November 29, 1971.

---

[2]Instruction No. 2 provides in part: "Circumstantial evidence consists of proof of facts or circumstances which according to the common experience of mankind give rise to a reasonable inference of the truth of the fact sought to be proved."