[No. 1110-3.   Division Three.   July 30, 1975.]

HAWAIIAN INSURANCE & GUARANTY CO., *Appellant*, v.
ROBERT L. MEAD, ET AL, *Respondents*.

*Edwin J. Snook* and *Lycette, Diamond & Sylvester,* for appellant.

*Douglas D. Peters* (of *Felthous, Peters, Schmalz & Leadon, Inc., P.S.*), for respondents.

WILLIS, J.*—On January 13, 1970, the defendant Robert L. Mead (referred to herein as though he were the sole defendant) was driving his automobile in a southerly direction on Highway 12 near Toppenish, Washington. He was being followed by a panel truck belonging to Bilyeu's Meats, Inc. (hereafter Bilyeu). Approaching from the opposite direction was an automobile operated by one David Hunter, an uninsured motorist. The Hunter vehicle crossed the center line into the lane occupied by the Mead and Bilyeu vehicles and collided with the Mead car. In rapid succession, the Bilyeu truck struck the rear of the Mead car. The defendant Mead sustained personal injuries in those collisions.

On March 17, 1970, the defendant, for an expressed consideration of $2,075.83, executed a document denominated a "release of all claims" which stated that he

does hereby . . . release, acquit and forever discharge . . . Bilyeu Meats, Inc. . . . or its agents . . . and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 13th day of January, 1970, at or near Toppenish, Washington.

---

*Judge Robert J. Willis is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

This release was negotiated by a representative of the insurance company that carried the liability insurance on the Bilyeu vehicle.

At the time of the accident the defendant was insured by the plaintiff, Hawaiian Insurance & Guaranty Company (hereafter Hawaiian), by virtue of an automobile liability policy which contained a provision granting uninsured motorists protection or coverage to the insured and which provided for the settlement by arbitration of any dispute as to such coverage or the amount of any recovery thereunder.

Sometime after the execution of the release to Bilyeu, the defendant filed a petition seeking arbitration under the uninsured motorist provision of his policy with the plaintiff. Plaintiff then filed the present action seeking an order declaring that the defendant was not entitled to arbitrate this matter due to his willful breach of the insurance contract. The alleged breach relied on by the plaintiff was the defendant's failure to obtain the written consent of the plaintiff to the settlement he made with Bilyeu, which it contends was in violation of that portion of his policy relating to uninsured motorists coverage.[1]

In 1967, the Washington State Legislature enacted, as a part of our insurance code, certain statutes which require all automobile liability policies to contain uninsured motorist protection and which define certain rights thereunder belonging to the insurer.[2]

---

[1]"Exclusions: This policy does not apply under Part IV: . . . (b) to bodily injury to an insured with respect to which such insured . . . shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;"

[2]RCW 48.22.030 states, in part:

"On and after January 1, 1968, no new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto . . . for the protection of

The case came on for trial before court and jury. The defendant testified that he did not receive a written consent from the plaintiff to sign the release which he gave to Bilyeu. At the end of all the evidence, the court granted the defendant's motion for dismissal, and in so doing, ruled: (1) that the release given by the defendant to Bilyeu was not ambiguous and was intended to relate only to the Bilyeu-Mead collision, to release only Bilyeu and his agents, and not to release the uninsured driver in the other vehicle; (2) that the signing of the release without the written consent of the plaintiff was not a breach of the insurance contract; (3) that the giving of the release to Bilyeu did not release the uninsured motorist; and (4) that the policy provision requiring the written consent of the insurer to the release of any person legally liable for bodily injury to the insured is against the public policy of this state and is therefore unenforceable.

Issue No. 1: *Did the policy provision requiring the insured to obtain the written consent of the company before making a settlement with any person legally liable for bodily injury to the insured violate the public policy inherent in the statute requiring uninsured motorist coverage in every automobile liability policy?*

The trial court ruled that the policy provision was in violation of the public policy of the state. We agree.

Our courts have held that attempts by an insurer to restrict the uninsured motorists' protection required by the statute are invalid. Thus, in *Signal Ins. Co. v. Walden,* 10

persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, . . ."

RCW 48.22.040(3) provides:

"In the event of payment to an insured under the coverage required by this chapter and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such insured against any person or organization legally responsible for the bodily injury for which such payment is made, . . ."

Wn. App. 350, 517 P.2d 611 (1973), the uninsured motorists' provision in the policy contained a 1-year limitation. In holding that such provision was invalid, the court quoted as follows, at page 353:

> Any limiting language in an insurance contract which has the effect of providing less protection than that made obligatory by the above statute would be contrary to the public policy as expressed, and of no force and effect.[3]

The *Walden* court also stated at 353-54:

> The 1-year limitation in the uninsured motorist section of the policy inhibits the fulfillment of the public policy that a claimant shall have the same rights in an uninsured motorist situation as he would have against a responsible third party.

In *Hartford Accident & Indem. Co. v. Novak*, 83 Wn.2d 576, 520 P.2d 1368 (1974), the court held that a provision in the uninsured motorists section of a liability policy which made coverage conditional upon physical contact between a hit-and-run vehicle and the vehicle of the insured was restrictive of the coverage mandated by the statute, and was therefore invalid as being contrary to public policy.

In *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 494 P.2d 479 (1972), the son of the insured, while riding in his own automobile (not the insured vehicle) was injured when he collided with an uninsured vehicle. The policy covered the plaintiff as a "relative of the named insured who is a resident of the same household." The defendant sought to avoid liability under the uninsured motorists section of the policy by relying on an exclusion that stated that such coverage did not apply to bodily injury to an insured while occupying a vehicle other than the insured automobile. The court held that the exclusionary provision was void, saying at page 335:

> The legislative purpose . . . is not to be eroded or, as the cases say, whittled away by a myriad of legal niceties arising from exclusionary clauses.

---

[3]*Brummett v. Grange Ins. Ass'n*, 4 Wn. App. 979, 981, 485 P.2d 88 (1971).

The plaintiff urges that the provision requiring its consent before the insured can settle with any person liable for his bodily injury is not just another exclusion constituting a "legal nicety," noticed by the court in *Touchette*, but is actually a valid provision protective of the statutorily recognized subrogation rights of the insurer.

A similar contention was made, and rejected, under very similar circumstances, in *Harthcock v. State Farm Mut. Auto Ins. Co.*, 248 So. 2d 456 (Miss. 1971). Mississippi statute section 8285-51 provides that no automobile liability policy shall be issued unless it contains

> an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle,

A further statute, section 8285-54 provides:

> An insurer paying a claim under the endorsement or provisions required by Section 1 [§ 8285-51] shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage, to the extent that payment was made; . . .

The court said, at page 459:

> The "person causing such injury" within the meaning of this section is the uninsured motorist. The statute is not concerned with other joint tort-feasors. The protection afforded by the uninsured motorists coverage is not liability insurance. It affords no protection to the uninsured motorist. Its sole utility is to provide the injured party a means of collecting damages for his injuries; and rather than indemnifying the uninsured motorist, as does conventional liability insurance, it provides that the insurer paying the injured party is subrogated to the injured party's rights against the uninsured motorist to the extent that payment is made. State Farm and Universal are not entitled to be subrogated to plaintiff's claim against Roark [insured driver involved in collision with uninsured vehicle, in which plaintiff was a passenger], and the settlement of that claim did not diminish the uninsured motorists coverage.

In *Harthcock*, each of the two policies contained a clause

which purported to exclude coverage under the uninsured motorists provision for

> bodily injury to an insured with respect to which such insured . . . shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor.

The court said, at pages 459-60:

> Insofar as this exclusion applies to a tort-feasor other than the uninsured motorist, this provision is invalid. The insurer may not cut down on the coverage the statute requires. The statute intends to provide a source for the collection by the insured of all sums which he shall be legally entitled to recover as damages against the owner or operator of an uninsured motor vehicle. The coverage afforded by these policies is mandatory under the statute and may not be cut down by a policy exclusion. The construction placed on this provision by State Farm and Universal renders the uninsured motorists coverage conditional in that it does not apply unless the insured surrenders the right to settle with another tort-feasor. This exclusion, when applied to tort-feasors other than the uninsured motorist, is an invalid abridgement of the coverage required by the statute, and is void.

■■ We have quoted at length from the language of *Harthcock* because both the factual situation and the controlling statutes are very similar to those in the case at bar. While the Mississippi statute granting subrogation to the insurer says it shall extend to "the rights of the insured to whom such claim was paid *against the person causing such injury,*" the Washington statute grants similar subrogation rights to the insurer who makes payment to the insured under the uninsured motorists coverage, "to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such insured against any person or organization legally responsible for the bodily injury *for which such payment is made.*" (Italics ours.) See footnote 2, RCW 48.22.040 (3). Where *Harthcock* says that "the person causing such injury," referred to in the statute, is the uninsured motorist, we find that "any person . . . legally responsible for the bodily injury for which such

payment is made" is also the uninsured motorist. Certainly the plaintiff insurer is not going to make any payment under its policy in extinguishment of, or in application upon, the legal responsibility of any other person.

We therefore approve the language of *Harthcock*, above quoted, and hold that the exclusionary provision of plaintiff's policy which would withhold coverage if the insured should make a settlement without the company's written consent is void, because it restricts the coverage required by the statute, and is therefore contrary to the public policy of this state.

Decisions holding to like effect are set forth.[4]

In *Michigan Mut. Liab. Co. v. Karsten*, 13 Mich. App. 46, 163 N.W.2d 670 (1968), the policy provision granting uninsured motorists' coverage is in identical language to that employed in the Hawaiian policy insuring the defendant in this action.[5]

The plaintiff has cited a number of cases from several jurisdictions in which similar exclusionary provisions involving settlements by the insured without company consent have been held valid. The cases of *Kisling v. MFA Mut. Ins. Co.*, 399 S.W.2d 245 (Mo. App. 1966), and *LaBove*

---

[4]*Michigan Mut. Liab. Co. v. Karsten*, 13 Mich. App. 46, 49, 163 N.W.2d 670 (1968); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Clem*, 273 So. 2d 218 (Ala. Ct. Civ. App. 1973); and *Guthrie v. State Farm Mut. Auto Ins. Co.*, 279 F. Supp. 837 (Va. 1968). *See American Motorists Ins. Co. v. Thompson*, 253 Ore. 76, 453 P.2d 164 (1969). In *Michigan Mut. Liab. Co.*, the court said:

"The language of the policy is clear and unambiguous and the exclusion clause can only mean that the settlement forbidden in this case * * * is one made by the insured with a person legally liable for injuries caused by an accident arising out of the ownership, maintenance or use of the *uninsured* vehicle. This means that the exclusion clause does not prohibit a settlement with a joint tortfeasor liable for injuries arising out of the ownership, maintenance or use of his own *insured* vehicle."

[5]The Hawaiian policy in this case provides: "To pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;"

*v. American Employers Ins. Co.,* 189 So. 2d 315 (La. App. 1966), are inapposite, since they both involve situations in which there was no statute requiring uninsured motorists' protection. In *LaBove,* the court said, at page 318:

in the absence of any statutory prohibition, the defendant insurer may impose whatever conditions it pleases upon its obligations under the policy.

*Cotton States Mut. Ins. Co. v. Torrance,* 110 Ga. App. 4, 137 S.E.2d 551 (1964), is distinguishable not only because it involved no controlling statute but also because the violation of the exclusion clause involved a judgment obtained by the insured *against the uninsured motorist* without the insurer's consent.

The additional cases relating to this phase of the case, cited by the plaintiff, are also distinguishable, either because they involved no statute compelling uninsured motorists coverage, because the offending action of the insured was the maintenance of a suit against, or a settlement with, the uninsured motorist, or for both of such reasons.

We therefore conclude, as to this phase of the case: (1) that the policy provision requiring the written consent of the insurer before the insured can make settlement with any person liable for his injury is contrary to public policy and invalid; and (2) that the defendant did not breach the insurance contract by making settlement with Bilyeu.

Issue No. 2: *Did the defendant's signing of the release given to Bilyeu release the uninsured motorist?*

The plaintiff points out that the release is inclusive and far reaching in its terms, covering three categories of persons, namely: (1) Bilyeu's Meats, (2) any servant or agent of Bilyeu's Meats, and (3) all other persons from all claims growing out of the accident of January 13, 1970.

The trial court, in its finding of fact No. 6, found as follows:

On March 17, 1970, Robert Mead signed a release for the second impact, the release being Exhibit 2. The release is unambiguous and relates only to the second impact, that being the collision between the Bilyeu vehicle and the

Mead vehicle. The release intended to release Robert E. Bilyeu and his driver.

The court's conclusion of law No. 2 was as follows:

2. The uninsured motorist Hunter and the driver of the Bilyeu vehicle were successive tort-feasors.

The defendant Mead testified in relation to his execution of the release, as follows:

Q  So you consider this to be fully compensated to this point?
A  Right. I would have no bills coming from the doctor, hospital or motor company. I would have another car and would be back in operation.
Q  Again, I hope I am not repeating myself, but I want to be clear on this point. Not only were you compensated for these things you have just mentioned to me, but you felt you were compensated for any bodily injury, pain and disability you also had up to that point?
A  Yes.
Q  When you signed that release, when you read it, what did you think "all other persons" meant?
A  "All other persons"? Anybody involved so far as the accident was concerned.
Q  So you to [sic] in effect release everybody who may have had any liability to you as a result of your accident?
A  Yes, up to that point, because everything to my knowledge was all wrapped up in one ball of wax and was, hopefully, to be forgotten.

■  Whether the above-quoted testimony of the defendant is properly in the case to assist in explaining the meaning of the release depends on a determination of the question as to whether the release is or is not ambiguous. Both parties and the trial court have taken the position that the release is unambiguous, and therefore, that parol evidence is not admissible to vary its terms. *Beaver v. Estate of Harris*, 67 Wn.2d 621, 409 P.2d 143 (1965); *Shannon v. Prall*, 115 Wash. 106, 196 P. 635 (1921); *Pepper v. Evanson*, 70 Wn.2d 309, 422 P.2d 817 (1967). However, the plaintiff contends that the unambiguous instrument means that "all

other persons" referred to therein includes the uninsured motorist, while the defendant urges, and the trial court held, that "the accident, casualty or event" mentioned in the release has relation only to the second impact, the collision between the Bilyeu and Mead vehicles.

The trial court stated in its oral opinion:

> One accident would have comprehended both of these two collisions. But in terms of the release itself I think the release was only intended, could only be intended to release Mr. Bilyeu and his driver because of the fact that that's who they were dealing with. Bilyeu wasn't intending to protect anybody else. It would have been foolish excepting as to his own driver presumably. But the insurance company used, and the court could certainly take notice, that this is very common language in this release; that they want to cover everyone with any derivative responsibility for what Bilyeu's driver did, and hence the broad language of "any person liable for the damage" and so forth. It wouldn't be intended to cover some independent tort-feasor.

We believe that the trial court was correct in ruling that the release was unambiguous and in holding that it was given solely for the purpose of releasing Bilyeu and anyone for whose negligence he would be responsible in the ownership, maintenance or use of the insured vehicle. In our opinion, this is the only result that can be supported by logic and sound common sense. According to the reasoning of the trial court, which we approve and adopt, "the accident, casualty or event" mentioned in the release, for which satisfaction was there acknowledged, could only mean the second impact, that is the collision between the Bilyeu and the Mead vehicles. Inasmuch as the release was unambiguous, the testimony of the defendant, as previously quoted herein, was inadmissible to vary its terms.

The determination as to whether or not a written instrument is ambiguous involves a question of law, to be determined by the court, and does not present a question of fact for jury determination. In *Ladum v. Utility Cartage, Inc.*, 68 Wn.2d 109, 115, 411 P.2d 868 (1966), the court said:

It is the general rule that the determination of whether a written instrument is ambiguous is a question of law for the court. [Citations omitted.]

In *In re Larson's Estate*, 71 Wn.2d 349, 354, 428 P.2d 558 (1967), the court stated:

The interpretation to be given written instruments, whether the procedure be civil or criminal, is a matter of law for the court, and not a question of fact . . . .

*See also Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 472 P.2d 611 (1970).

Therefore, we hold that in the giving of the release of March 17, 1970, to Bilyeu's insurer, the defendant intended to release Bilyeu, the Bilyeu driver and any other person who might bear derivative responsibility for the alleged negligent operation of the Bilyeu vehicle, but that there was no intention to thereby release the uninsured driver.

One other matter needs a ruling, namely, whether the release given to Bilyeu amounted in law to a release of Hunter, the uninsured motorist, under the rule that the release of one joint tort-feasor is a release of all. *Pinkham Lumber Co. v. Woodland State Bank*, 156 Wash. 117, 286 P. 95 (1930).

The plaintiff cites the case of *Young v. Dille*, 127 Wash. 398, 220 P. 782 (1923) and quotes the court's language as follows:

To be joint tort-feasors, the parties must either act together in committing the wrong or their acts, if independent of each other, must *unite in causing a single injury.* [Italics added by plaintiff.]

The facts of the *Young* case were almost identical to those in the case at bar, for the plaintiff Young's automobile was first hit by the car of one defendant and then, moments later, was struck by the vehicle of the other defendant. Holding that the defendants were not joint tort-feasors, the court said, at page 404:

The acts have no relation to each other except nearness in time. But time is not a determinative consideration. If the acts are not joint in fact, or, if the acts do not unite in

causing a single injury, they are as widely separated in law by the lapse of moments as they would be were they separated by the lapse of hours or days. Plainly, under the conditions here shown neither of the actors in the wrong could be responsible for the injuries caused by the other.

In *Young*, the court also pointed out that a part of the damages suffered by the plaintiff was caused by the act of one defendant and another part by the act of the other defendant. The same situation exists in the instant case.

However, the record in this case does not disclose the amount of damage that was caused the defendant by the first collision (with the Hunter car) and what amount was caused by the second collision (with the Bilyeu truck). On the surface, it might appear that *Fugere v. Pierce*, 5 Wn. App. 592, 490 P.2d 132 (1971) would control, under these circumstances. It held that where a motorist suffered injuries incapable of any logical or reasonable apportionment as a result of almost simultaneous collisions with an oncoming vehicle and a following vehicle, he had a cause of action against each tort-feasor for the full amount of the damages sustained. The court stated, at page 597:

> The majority view in our country in cases similar to the instant one, where there are collisions in rapid succession producing a single end result, and no substantial proof as to what damage was caused by each collision, is to hold each tort-feasor jointly and severally liable. *See* Annot., 100 A.L.R.2d 16 (1965). Although independent tort-feasors generally are not jointly and severally liable where their acts caused distinct and separate injuries, or where some reasonable means of apportioning the damages is evident, the negligent driver of an automobile in the successive impact has been held jointly and severally liable for all of plaintiff's injuries if the injuries are "indivisible" and the liability therefor cannot be allocated with reasonable certainty to the successive collisions. This has come to be known as the "single indivisible injury rule."

(Citations omitted.)

On the other hand, in *Litts v. Pierce County*, 5 Wn. App. 531, 488 P.2d 785 (1971), filed less than 2 months before *Fugere*, the court reviewed at some length the Washington decisions involving multiple-party collisions and stated (1) that the term "joint tort-feasors" should be reserved for those that have acted in concert, and (2) that tort-feasors whose independent acts of negligence have concurred to produce the proximate cause of injury to a third person are "concurrent tort-feasors." In *Litts*, where the court ruled that the two negligent actors were "concurrent tort-feasors" rather than "joint tort-feasors," where it was overwhelmingly apparent that the injured party's release of one defendant was given without the intention of releasing the other defendant and where the release did not constitute satisfaction of the obligation, it was held that the release of one defendant did not release the other.

In a later case, *Christianson v. Fayette R. Plumb, Inc.*, 7 Wn. App. 309, 499 P.2d 72 (1972), it was held that a covenant not to sue one set of defendants constituted a release as to them but did not release another defendant. The court stated that it was modifying the joint tort-feasor release rule to conform to Restatement of Torts § 885 (1939), as set forth below.[6]

It will be noted that the document involved in *Christianson* was a covenant not to sue, and not a release; and the court held that it did not release the other tort-feasor. The portion of the quotation from the Restatement relating to a

---

[6] "(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

"(2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.

"(3) Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person."

release, therefore, can have no precedential authority and must be regarded as dicta.

■ We prefer the logic of the *Litts* decision, and hold that the proper rule is as there stated, namely, that a release of one of several concurrent tort-feasors, whose obligation is solidary,[7] does not release the other concurrent tort-feasors unless it can be established as a fact either (1) that the injured party intended to release all tort-feasors or (2) that the release constituted satisfaction of the obligation. In the case at bar, neither of these conditions has been met.

■ Our holding that the Bilyeu release does not have the effect of releasing the uninsured motorist, follows the philosophy of *Finch v. Carlton*, 84 Wn.2d 140, 524 P.2d 898 (1974), that, although the law favors the private settlement of disputes, the law *strongly* favors the just compensation of accident victims.

On the other hand, and even if the first paragraph of the quotation from the Restatement, previously quoted, should be held controlling, it does not properly apply to the situation in the instant case, for, as previously indicated, the payment received for the release given by the defendant to Bilyeu was intended in satisfaction of the harm caused by the Bilyeu-Mead collision and not as satisfaction for the harm caused by the Hunter-Mead collision. Consequently, the language of the Restatement that "[a] valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others *liable for the same harm*" does not apply to a situation, as in the case at bar, where the release satisfied the harm caused by the second impact but not that caused by the first impact.

We conclude that the Bilyeu release was not intended to release and did not in law have the effect of releasing the uninsured motorist from liability to the defendant for the

---

[7]Solidary—"Constituting or relating to an obligation in solido under Roman, civil, or Scots law wherein the parties thereto are bound jointly and severally for the entire debt or damages or for the full performance or object of the obligation, . . ." *Webster's Third New International Dictionary* (1969).

results of his negligence involved in his collision with the defendant. The defendants are entitled, therefore, to have their claim against the plaintiff submitted to arbitration.

Judgment affirmed.

MCINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied September 22, 1975.

Review denied by Supreme Court February 2, 1976.