Robert William FORD, Jr., et al., Petitioner,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. B–6135.

Supreme Court of Texas.

March 2, 1977.

Rehearing Denied June 8, 1977.

Morgan, Dudensing & Tullis, Paul F. Jensen, Houston, for petitioner.

Vinson, Elkins, Searls, Connally & Smith, John T. Golden, Houston, for respondent.

DANIEL, Justice.

This is a suit to recover under the uninsured motorist provisions of a Texas standard automobile policy issued by State Farm Mutual Automobile Insurance Company. The principal question is whether State Farm's unconditional denial of liability constituted a waiver of its right to consent before its insured subsequently settled with another insurance carrier.

The trial court, hearing the case without a jury, rendered judgment for the insured. The Court of Civil Appeals reversed and rendered. 537 S.W.2d 138. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

On October 18, 1969, Mrs. Joan Elizabeth Ford was a passenger in an automobile driven by Mrs. Shirley Harvey when the Harvey automobile was in a collision with a vehicle driven by Jeffrey Whitten. The collision resulted in Joan Ford's death and damages in excess of $20,000. Mrs. Ford was survived by her husband, Robert W. Ford, Jr., and their three children. Jeffrey Whitten, whose negligence caused the collision, was an uninsured motorist.

At the time of the collision, the Harvey automobile was covered by a policy of automobile liability insurance issued by Gulf Insurance Company, with a standard uninsured motorist clause coverage of bodily injury limits for one person in the amount of $10,000. At the same time, Ford also had an automobile liability policy with State Farm containing the same standard uninsured motorist coverage.

On July 21, 1970, suit was filed by Robert W. Ford, Jr., individually and as guardian of his three minor children, against State Farm and Gulf Insurance for recovery under the uninsured motorist provisions of each policy, in the total sum of $20,000. Plaintiff plead the existence and coverage of both policies.[1] Separate answers were filed for State Farm and Gulf by different members of the same law firm. Gulf had indicated a willingness to settle for the

---

1. The limits of liability under each of the two policies was $10,000. See *American Motorists Insurance Co. v. Briggs*, 514 S.W.2d 233 (Tex. 1974), and *American Liberty Insurance Co. v. Ranzau*, 481 S.W.2d 793 (Tex.1972), for rule as to coverage by more than one policy.

$10,000 limit of its policy. Before consummation, the parents of Mrs. Ford filed a conflicting claim, and Gulf interpleaded them in its answer of July 29, 1970.

On October 23, 1970, State Farm filed its original answer generally denying any liability. Thereafter, on April 16, 1971, plaintiff amended his petition to claim a total of $30,000 against the two insurance companies. On April 20, 1971, State Farm filed its first amended answer with pleas in bar "to Plaintiff's action in its entirety." One of these pleas alleged that plaintiff's action was barred by the policy's "OTHER INSURANCE" clause inasmuch as Mrs. Ford was riding in a car which was covered by the uninsured motorist provisions of a Gulf Insurance Company policy. It alleged that the Gulf policy was applicable and available to plaintiff, and that State Farm was in no event liable to pay anything under its policy.[2]

In the meantime, on June 29, 1971, an interlocutory judgment was entered dismissing the interpleader suit against Mrs. Ford's parents and in favor of plaintiff against Gulf for its policy limit in the amount of $10,000, without prejudice to plaintiff's cause of action against the remaining defendant, State Farm. Contemporaneously, plaintiff and Gulf entered a release-trust agreement by which Gulf, and only Gulf, was released from claims growing out of the accident and authorizing Gulf, at its sole expense, to proceed in the name of plaintiff against the person or or-

ganization responsible for the operation of the uninsured automobile at the time of the accident.[3]

The remaining cause as to State Farm was severed on July 26, 1971, and on November 9, 1972, State Farm filed its second amended answer in which it set up as an additional defense the allegation that plaintiff's claim was barred because of the settlement with Gulf Insurance without the written consent of State Farm. It specifically plead an exclusionary clause in its policy relating to Part IV (the uninsured motorist provisions), which reads as follows:

"Exclusions. This policy does not apply under Part IV:

"(a) . . .

"(b) [T]o bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor."

It was stipulated that State Farm "had denied liability to the plaintiffs as evidenced by, among other things, the Original Answer . . . and had refused to pay any money damages prior to the entering of the interlocutory judgment made between Robert William Ford, Jr., and Gulf Insurance Company . . . ." It was also stipulated that prior to the settlement with Gulf, "Plaintiffs or their representatives

---

**2.** Other defensive allegations were (1) that Mrs. Ford was not married to plaintiff at the time of her death, (2) that the sole proximate cause of the accident was the negligence of Shirley Harvey, and (3) in the alternative, that it was an unavoidable accident. All were decided against State Farm at trial and none are brought forth in this appeal. State Farm conceded in its brief in the Court of Civil Appeals that "Joan Elizabeth Ford was the spouse of Robert W. Ford, Jr., at the time of her death on October 18, 1969," and that "the collision was attributable to the negligence of Jeffrey Whitten, who was an uninsured motorist." (Appellant's Br., 2.)

**3.** This agreement contained the usual subrogation and trust provisions authorized by Article

5.06–1(3) of the Texas Insurance Code, which reads in part as follows:

"In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness or disease, or death for which such payment is made, . . . ."

All statutory references are to Vernon's Tex. Ins.Code Ann., unless otherwise noted.

made no request or demand" upon State Farm to consent to the settlement.

Robert W. Ford, Jr., died on November 19, 1973. His mother, Mrs. Margaret Ford, was substituted as plaintiff in the capacity as guardian of Ford's three minor children. The trial court heard evidence and stipulations on October 14, 1974, received briefs, and kept the case under consideration until July 29, 1975. On that date it rendered judgment that plaintiff recover against State Farm the sum of $10,000 on behalf of the children.

There are no findings of fact or conclusions of law, but it appears from the State Farm's motion for new trial that the trial court may have followed *Stephens v. State Farm Mutual Automobile Ins. Co.*, 508 F.2d 1363 (5th Cir. 1975), which held that the consent clause was waived in that case by State Farm's denial of liability under similar circumstances. Upon appeal of the present case by State Farm, plaintiff (as appellee) had a counterpoint stating that the trial court correctly ruled in favor of plaintiff because State Farm waived the consent provisions by denying all liability under its policy prior to plaintiff's acceptance of Gulf's policy limit payment. In reversing and rendering, the Court of Civil Appeals made no holding on or mention of the waiver counterpoint. We granted this writ on petitioner's (plaintiff's) point which alleged error of the Court of Civil Appeals in failing to sustain the waiver counterpoint.

Plaintiff-petitioner also asserts that the exclusionary provision of the policy is wholly invalid because it deprives the insured of the statutory protection of Article 5.06–1 of the Insurance Code. Although there is a trend in other jurisdictions toward narrow construction or voiding such clauses as unreasonable restrictions on mandatory uninsured motorist coverage,[4] Texas courts have consistently upheld the validity of the provision as a means of protecting the insurer's subrogation rights against the uninsured

motorist or any other person legally responsible for the insured's injuries. *McClelland v. United Services Automobile Association*, 525 S.W.2d 271 (Tex.Civ.App.1975, writ ref'd); *Jessie v. Security Mutual Casualty Company*, 488 S.W.2d 140 (Tex.Civ.App. 1972, writ ref'd, n. r. e.); *Grissom v. Southern Farm Bureau Casualty Insurance Company*, 476 S.W.2d 448 (Tex.Civ.App.1972, writ ref'd, n. r. e.).

The question of whether the insurer waives the consent provision by prior unconditional denial of liability is one of first impression for Texas courts. The issue was not raised in any of the above cited Texas decisions, although the holding on the waiver issue in *Stephens v. State Farm, supra*, was noted in *McClelland v. United Services Automobile Association, supra*, in distinguishing the two cases. Those jurisdictions which have examined the issue agree that such denial of liability prior to the insured's settlement with a third party constitutes a waiver of the consent clause. *Employers National Insurance Co. v. Parker*, 286 Ala. 42, 236 So.2d 699 (1970); *Calhoun v. State Farm Mutual Automobile Ins. Co.*, 254 Cal. App.2d 407, 62 Cal.Rptr. 177 (1967); *Allstate Ins. Co. v. Pietrosh*, 85 Nev. 310, 454 P.2d 106 (1969); *Gay v. Preferred Risk Mutual Insurance Co.*, 114 N.H. 11, 314 A.2d 644 (1974); *Vanguard Ins. Co. v. Polchlopek*, 18 N.Y.2d 376, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966); *Childs v. Allstate Ins. Co.*, 237 S.C. 455, 117 S.E.2d 867 (1961); and *Stephens v. State Farm Mutual Automobile Ins. Co.*, 508 F.2d 1363 (5th Cir. 1975). See Annot. 25 A.L.R.3d 1275, 1291–1292 (1969), wherein the rule is stated as follows:

"Where an insurer has denied liability under an uninsured motorist indorsement prior to the time that the insured commenced suit or entered into settlement, it has been held that the insurer was thereby precluded from asserting a clause in the indorsement excluding coverage where the insured, without the insurer's consent, makes a settlement with, or ob-

---

4. See cases cited in Annot. 25 A.L.R.3d 1275, 1281–1285 (1969); Id. Supp. 39–40; and *Hebert v. Green*, 311 So.2d 223 (S.Ct.La.1975); and

*Hawaiian Insurance & Guaranty Co. v. Mead*, 14 Wash.App. 43, 538 P.2d 865 (1975).

tains judgment against, a person or organization liable for his injuries."

In the *Stephens* case, *supra,* the United States Court of Appeals, Fifth Circuit, faced a waiver of consent issue based upon relevant facts which were almost identical to those in the instant case. Stephens, individually and as personal representative of his deceased wife, sued State Farm and Royal Indemnity Company in the United States District Court for the Southern District of Texas for recovery under the uninsured motorist provisions of the Texas standard automobile policies which State Farm carried on Mr. Stephens' car and which Royal issued on Mrs. Stephens' car. State Farm filed an answer denying all liability. Thereafter, Stephens settled with Royal for the full recovery limit of its policy without State Farm's written consent. Whereupon, State Farm amended its pleading, claiming exclusion of coverage for the same reasons alleged against plaintiff in the present case. The trial court entered judgment for Stephens, and State Farm appealed.

The Circuit Court of Appeals affirmed after correctly anticipating that, "based upon reason and out-of-state authority" that we would hold "that a denial of coverage waives the consent clause." It said:

". . . The rationale behind holding to this particular waiver theory is that a claimant should not be required to approach his insurer, hat in hand, and request consent to settle with another when he has already been told in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments. . . in the case of existent, denied liability the denial is a breach of contract on the part of the insurer and its breach should by rights, relieve the insured of the punitive effects of his failure to comply with consent provisions of the insurance policy. We believe that Texas would so hold."

We have so held, because the cases cited above are in accord with principles of Texas contract law. State Farm's contract was to pay up to its policy limits "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . including death . . . caused by accident and arising out of the . . . use of such uninsured automobile . . . ." Awaiting payment, the policy provides how State Farm may determine by agreement, arbitration, or judicial process any issues affecting the claimant's entitlement to payment.

State Farm neither paid nor pursued any of its affirmative steps for determination of what, if anything, it was due to pay plaintiff. Instead, it unconditionally denied all liability under the policy. This intentional conduct was inconsistent with claiming the right under the policy to consent before its insured settled with a third party. Such conduct constituted a waiver of that right. "Waiver has been frequently defined as an intentional relinquishment of a known right or *intentional conduct inconsistent with claiming it.*" (Emphasis supplied.) *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396, 401 (Tex. 1967). See *Womack v. Allstate Insurance Company,* 156 Tex. 467, 296 S.W.2d 233, 236 (1956); *Niagara Ins. Co. v. Lee,* 73 Tex. 641, 11 S.W. 1024 (1889); *American Employers' Ins. Co. v. Brock,* 215 S.W.2d 370 (Tex.Civ. App.1948, writ ref. n. r. e.).

If State Farm had been correct in unconditionally denying coverage and liability, it would have lost nothing by plaintiff's settlement with Gulf. Since State Farm was incorrect in its denial, it has lost only the inconsistent right to assert the exclusionary consent clause as a grounds for forfeiture of plaintiff's entire coverage. It has not lost its right of subrogation. See Art. 5.06–1(3), Texas Insurance Code. When it pays the amount adjudged to plaintiff by the trial court, State Farm will still have its right to institute proceedings in the name of plaintiff against the uninsured motorist

or any other person responsible for the accident. It is true that State Farm will have to share subrogation rights with Gulf Insurance which may, by reason of the earlier settlement, have a call on the first $10,000 recovered by plaintiff from any person responsible for the accident. The relative status of the subrogation rights of the two companies, as between themselves, is a question which is not now before us, and we express no opinion thereon.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Dissenting opinion by POPE, J., in which REAVLEY, J., joins.

YARBROUGH, J., not sitting.

POPE, Justice, dissenting.

The majority has ruled that an insurer that files a general denial after it has been sued, thereby breaches its contract and waives conditions precedent as well as the exclusions expressed in a policy. In short, the holding is that the insurer's general denial strips it of an otherwise lawful defense.

Joan Ford was a passenger in an automobile driven by Shirley Harvey. When the Harvey car collided with a vehicle driven by uninsured Jeffrey Whitten, Joan Ford was killed. Joan Ford was insured by State Farm Insurance. The Harvey vehicle was insured by Gulf Insurance Company. The Whitten vehicle was uninsured.

Plaintiff Robert William Ford filed this suit against State Farm and Gulf Insurance on July 21, 1970, and State Farm answered by a general denial. Plaintiff filed an amended petition against the same two defendants but prayed for damages in the amount of 30,000 dollars. The defendant State Farm then filed an answer (1) denying that Joan Ford was either married to or a relative of Robert William Ford, the insured, (2) alleging that Shirley Harvey's negligence was the sole cause of the accident, and (3) denying liability in the amount of 30,000 dollars or in any amount.

Joan Ford's parents also asserted a claim against Gulf Insurance Company. Gulf then interpleaded Joan's parents. While matters were in that posture, Gulf Insurance and plaintiffs settled the Ford claim by the payment of 10,000 dollars, its policy limits.

State Farm then amended its pleadings a second time, alleging again that Joan Ford was not Robert Ford's wife and also that the State Farm policy contained this exclusionary clause: .

This policy does not apply under Part IV:

\*       \*       \*       \*       \*       \*

(b) to bodily injury to an insured with respect to such insured, his legal representative or any person entitled to payment under this coverage who shall, without written consent of the Company, make any settlement with any person or organization who may be legally liable therefor;

It was stipulated that neither the plaintiffs nor their representatives informed State Farm about the settlement and did not require or demand State Farm's consent to the settlement with Gulf Insurance. The quoted provision has been enforced by all of our prior decisions, but this court has now, for the first time, held that an insurer who answers and defends against an unfounded or an excessive claim, thereby breaks its contract. However right the insurance company may be in its defense, it loses by asserting its rights.

The live pleadings upon which this case went to trial prayed for the recovery of 30,000 dollars. Under no theory, were the two defendants liable as insurers for more than 10,000 dollars each for a combined total of 20,000 dollars. The insurer had and asserted a defense to that excessive claim and actually won the case. The holding of the majority is that an insurer who actually prevails upon trial to defeat a false and excessive claim, nevertheless must lose his policy defenses. This means that an insurer is put to an election to defend against an excessive claim and lose its contract rights or save its contract rights by failing to answer or defend. By not answering, the

insurer saves its contract rights, but a default judgment for the excessive amount may then be adjudged against it.

State Farm had a second defense. State Farm alleged that Joan Ford, the decedent, was not the wife of Robert Ford. Robert Ford was State Farm's insured. The policy would, of course, reach Robert Ford's wife, but it did not cover third parties. State Farm alleged that Joan Ford was not the wife of its insured Robert Ford at the time of the accident. The contention was not frivolous. The plaintiffs joined in the stipulation that:

ROBERT WILLIAM FORD, JR. and JOAN ELIZABETH FORD were married on May 13, 1962 and were divorced on May 8, 1967; JOAN ELIZABETH FORD subsequently married JIMMY LEE BURKE, which marriage ended in divorce on May 22, 1969, in Harris County, Texas.

The parties, in advance of trial, isolated three issues which needed to be determined, and then stated the first one as:

Whether JOAN ELIZABETH FORD was the spouse of ROBERT WILLIAM FORD, JR., at the time of her death on October 18, 1969, so as to qualify her as an insured under the provisions of the automobile liability policy issued by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY to ROBERT WILLIAM FORD, JR.

Our question again is not whether the insurer succeeded or failed in its defense; it is whether an insurer can assert such a defense without forfeiting policy rights and defenses. Apparently the proof established the fact of a common law marriage. We have no statement of facts, and the trial court's determination that Joan was in fact, the spouse of Robert Ford is not challenged and it was not attacked before the court of civil appeals. But the fact of marriage between Robert Ford and Joan Ford required a trial for its determination. That is the reason an insured is entitled to answer and defend a lawsuit.

The majority opinion deviates from past decisions which have consistently followed the contract requirements that consent in writing to "any settlement with *any* person or organization who may be legally liable therefor. . . ." [Emphasis added.] The general state of the law is expressed by Widiss, A Guide to Uninsured Motorist Coverage § 5.7 (Supp.1976):

Decisions continue to hold that failure to comply with the provision in the endorsement that requires the insurer's consent to a settlement works a forfeiture of the insured's rights under the uninsured motorist coverage.

Faced with the argument that the prohibitions without consent to settle *any* claim with *any* person is restricted to a settlement with the uninsured motorist, Professor Widiss says:

However, two 1972 Texas cases reach the opposite result—holding that the language of the endorsement is plain and clear, and must be enforced. In addition, in two 1971 cases where a parent failed to secure consent for a settlement with the driver's insurer in accidents where the children were killed while riding as passengers in an insured vehicle that collided with an uninsured motorist—the courts held that the parents were precluded by such settlements from recovering under their uninsured motorist coverage since the endorsement provision applied to settlements with any person or organization who might be legally liable. Sec. 5.10.

As in the case at issue, the plaintiff in *McClelland v. United Services Automobile Association*, 525 S.W.2d 271 (Tex.Civ.App. 1975, writ ref'd n. r. e.), was a passenger who was suing her own insurer, U.S.A.A. McClelland was riding in a car owned by Charles Coulter which was insured by Allstate Insurance Company. The Coulter car ran into a vehicle of an uninsured motorist. The plaintiff McClelland settled with the insurer of the host vehicle (Coulter) without notice or consent to her own insurer. These facts exactly parallel those of our present case. The court in enforcing the consent to settle provision held that the passenger's settlement with the driver's insurer defeated the subrogation right of the passenger's

insurer to sue the driver of the host vehicle. A potential target for recovery by the passenger's insurer was thus eliminated.

*Jessie v. Security Mutual Casualty Company,* 488 S.W.2d 140 (Tex.Civ.App.1972, writ ref'd n. r. e.), for the same reason reached the identical conclusion. That case, when it was presented to this court in 1972, squarely presented the question which is now before us. That opinion on its face is contrary to our present decision. It holds that the consent is required in order to protect an insurer's subrogation rights not only against the uninsured driver but of all other possibly liable persons whether insured or not. The *Jessie* opinion cited the same legal authority which is now cited by the majority opinion for a directly contrary result. In *Jessie,* the court determined that the view expressed by Widiss, cited above, was the better one. Our order refusing the writ, no reversible error, could only have been made if we approved the judgment denying relief to the plaintiff because he settled his cause without obtaining prior consent of his own insurer who held a valuable subrogation right.

The cases upon which the majority relies for its holding that the insurer had waived its policy provision which required "consent to settle" are cases in which there was an arbitrary withholding of consent by the insurer. In fact, that is the title under which those cases are discussed in the annotation which collects them. 23 A.L.R.3d 1289, *Uninsured Motorist Clause—Settlement* (1969). In the face of the stipulation between the parties, rather than an arbitrary refusal to consent, there were some very valid issues concerning State Farm's liability. As one example, the parties in advance of trial filed the stipulation which isolated three distinct issues, the first being:

> Whether JOAN ELIZABETH FORD was the spouse of ROBERT WILLIAM FORD, JR., at the time of her death on October 18, 1969, so as to qualify her as an insured under the provisions of the automobile liability policy issued by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY to ROBERT WILLIAM FORD, JR.

The issue was not a spurious one. The issue existed continuously from the time of the accident in question, and yet, State Farm has been charged with breaching its contract for insisting upon proof that the divorced decedent was nevertheless the common law spouse of its insured.

The majority places its main reliance upon *Stephens v. State Farm Mutual Automobile Ins. Co.,* 508 F.2d 1363 (1975). Mr. and Mrs. Stephens were the plaintiffs. They were both riding in Mrs. Stephens' car. She was driving when it collided with an uninsured motorist's vehicle. Mrs. Stephens was insured by Royal Indemnity Company; Mr. Stephens was insured by State Farm Mutual Automobile Insurance Company. Mr. Stephens sued both insurers, then settled with Royal for its full limits of the policy. State Farm, the insurer for the driver, did not consent to the settlement, but the Fifth Circuit predicted that Texas would hold that State Farm by denying the claim had waived its right to rely upon its "consent to settlement" provision. The court cited the Texas cases which have actually respected the validity and stated the reasons for the "consent to settlement" exclusion. It also cited *Magness v. State Farm Insurance Co.,* an unreported case from the Houston Fourteenth District Court of Civil Appeals which honored the policy defense. The same Houston Fourteenth District Court of Civil Appeals decided the present case consistent with its earlier *Magness* opinion. We now have two consistent decisions from the same court of civil appeals. But, the Texas Supreme Court has now inconsistently gone both ways.

The difference between the two directions our cases now send us is said to be that the insurer in this case waived the exclusion by filing a general denial to a lawsuit. That was a waiver? This is a new kind of a waiver. "Waiver has been frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."

*Massachusetts Bonding & Ins. Co. v. Orkin Exterm. Co.,* 416 S.W.2d 396, 401 (Tex. 1967). The rule is an old one. *Texas & P. Ry. Co. v. Wood,* 145 Tex. 534, 199 S.W.2d 652 (1947); *Rolison v. Puckett,* 145 Tex. 366, 198 S.W.2d 74 (1946).

The insurer in the present case relied upon the right. It pleaded it. It defended upon it. It hired a lawyer to insist upon it. At no point, and by no proof, was it even contended that the insurer intentionally relinquished that right. The insurer is now in trouble, not by reason of its intentional surrender, but by reason of its insistence upon the right. That is not a waiver.

The insurer did not take a position inconsistent with its policy. The policy required its consent to settle and it insisted upon that right. The policy insured only certain persons, not including a divorced wife of the insured, and it insisted upon that. The policy insured only for 10,000 dollars, and the insurer insisted that it was not liable for 30,000 dollars. Insisting upon compliance with the terms of the policy cannot be called "conduct inconsistent" with the policy. There was no waiver.

I respectfully dissent.

REAVLEY, J., joins in this dissent.